WALTER L. WAGNER
532 N 700 E
Payson, UT 84651
retlawdad@hotmail.com
808-443-6344

FILED IN THE
UNITED STATES
BANKRUPTCY COURT

2013 APR 12  AM 11: 05

DISTRICT OF UTAH

IN THE UNITED STATES BANKRUPTCY COURT

DISTRICT OF UTAH

--ooOoo--

WORLD BOTANICAL GARDENS,  )    Bankruptcy No. 12-35494
    INCORPORATED (WBGI),  )    A.P. No. 13-02099
                              )
    Plaintiff  )
                              )    **ANSWER**
    vs.  )
                              )
WALTER L. WAGNER,  )
                              )
    Defendant  )
_____)

ANSWER

      Comes now defendant Walter L. Wagner, and as answer to the Complaint
states as follows:



## GENERAL INTRODUCTION

1.     This action is yet another in a series of fraudulent lawsuits initiated by the successor board of directors of WBGI, a corporation founded by defendant Wagner in 1995, initially incorporated in Utah, and subsequently re-incorporated in Nevada in 2001 approximately seven months prior to 9/11/2001.  Operation of the actual botanical garden commenced on July 4, 1995 when the botanical garden opened for tourist business, following a brief ceremony held by defendant Wagner and Linda Wagner.

2.     During the decade that followed, defendant Wagner worked diligently at constructing a beautiful botanical garden in Hawaii, using capital raised from investors, most of whom visited during the construction phase (1995-2006) while defendant Wagner worked at constructing the botanical garden, and thereafter decided to invest based on their direct observations of the work in progress.  To facilitate this development, defendant Wagner did not draw his earned salary but instead was paid with Promissory Notes (which is the subject of the currently pending lawsuit in Hawaii, Civil No. 04-1-0232, *Wagner v. WBGI*, filed circa June 2004).  Over the course of time (1995 to 2004) that amount that defendant Wagner loaned to WBGI for its development totaled approximately $500,000 by way of the Promissory Notes, as well as an additional $70,000 by way of cash advances on his personal credit cards following the 9/11/2001 disaster that required an immediate cash infusion to keep WBGI from bankrupting.  (Tourism took an immediate nose-dive, bankrupting many companies in Hawaii, and tourism at WBGI never recovered the 20% loss of its cruise-ship revenue, as that Hawaii cruise ship bankrupted and no longer brought in tourists on the regular basis as before.)

3.      As a result of the 9/11/2001 disaster, several pending projects including construction of a Visitor Center were put on hold, and numerous adjustments in payment schedules were made, including delayed payments to the IRS (approved by the IRS) for employee withholding taxes, which were subsequently brought current in 2004. During this time period, defendant Wagner loaned an additional $70,000 to WBGI on his personal credit cards, which cash infusions were used to make payroll, etc.

4.      As a consequence of the delays engendered by 9/11, certain stakeholders in WBGI desired to join the Board of Directors, purportedly to 'assist', which original Board at the time consisted of defendant Wagner and Linda Wagner, the founders and original Board members. In September 2004 those individuals were appointed to the Board of Directors by way of Corporate Resolution signed by the existent original Board to a limited term, to be followed by general elections by the shareholders thereafter. This Board's chair was Kenneth Francik (Francik Board). The Corporate Resolution also specified that if the general elections were not held before the end of the limited term, the governance would revert back to the original Board (defendant Wagner and Linda Wagner).

5.      After the expiration of the limited term, and no general elections, the original Board then appointed a new Board of ten long-term WBGI shareholders chaired by Ron Tolman (Tolman Board). This procedure was reviewed and approved by WBGI's original corporate attorney, John Price.

6.      Notwithstanding the legitimacy of the Tolman Board, the Francik Board refused to recognize the Tolman Board and continued spending from the WBGI corporate account. That account was briefly frozen by the Tolman Board, then

3

released to the Francik Board on the proviso that the monies would not be used for any form of litigation between the two boards, and instead be used solely for the development of the botanical garden.

7.      Immediately following release of the money to the Francik Board circa April 2005 (so as to keep the garden running), the illegitimate Francik Board on June 30, 2006 filed suit in Hawaii (Hawaii, Civil No. 05-01-0210, *WBGI v. Wagner, Tolman et al.*) against the members of the Tolman Board including defendant Wagner, and Linda Wagner.  This had been made possible because during 2004, Mr. Dan Perkins as a sales representative for both Boards continued to sell investment shares for WBGI, both for the original Board, as well as for the Francik Board, providing approximately $500,000 that year in operating revenue for development of the botanical garden.  Control of that money had been provided to the Francik Board in September 2004, which then refused to relinquish its control following its failure to conduct required elections, and instead the Francik Board began using that money for litigation notwithstanding the written agreement between Francik and Mr. Tolman that the corporate money would not be used for any litigation between the two boards.

8.      A few months later on September 13, 2005, the Francik Board initiated a second suit, this time in the state of WBGI's incorporation of Nevada (Nevada, CV05-02079, *WBGI v. Wagner, Tolman, et al.*), which was nearly identical in its claims as its Hawaii suit.  Consequently, the WBGI Francik Board was proceeding in two separate forums on essentially the same (fraudulent) claims, in both forums naming the ten members of the Tolman Board (including defendant Wagner) as the defendants.

4

9.     As a consequence of this violation of the general legal principle that litigations should be constrained to a single forum, defendant Wagner filed a motion in the Hawaii suit seeking to have either the Hawaii suit, or the Nevada suit, dismissed on the basis that the plaintiff was proceeding in two separate forums on essentially the same cause of action.

10.    At the hearing of that motion, Judge Nakamura bifurcated the two cases, allowing both cases to remain extant, but limiting the Nevada case to decide solely the issue of which of the two competing boards of directors (Tolman Board, or Francik Board) was the legitimate WBGI board and disallowing any monetary claims in that case; and leaving the Hawaii case to decide solely the monetary claims and not the governance dispute. This was required to be agreed to by WBGI's attorney Tom Yeh in order to proceed forward on his Hawaii case for monetary claims, which it was, leaving him with the extant Hawaii case to continue to bill WBGI thereafter. Tom Yeh also served as Judge Nakamura's judge *pro tempore*.

11.    During the course of this litigation, the Francik Board began selling off WBGI land-holdings, as the $500,000 that had been tendered to that board by the original board proved insufficient for their litigation 'needs'. Additionally, they raided the Visitor Center account that had been set-up during the tenure of the original board, which contained approximately $200,000 of monies that existing shareholders had deposited into it with the express written promise that that money would be used exclusively for construction of the Visitor Center, which construction had initially been delayed by the 9/11 disaster. The WBGI shareholders had been promised, in writing by Kenneth Francik, that those separate Visitor Center account monies would be used exclusively for construction of the Visitor Center and for no other

purpose, as an inducement for them to invest beyond their original investment. The original board had gotten as far as having AIA architectural plans drawn for the Visitor Center, a model constructed, and the site excavated, when 9/11 hit and the project had to be shelved. Accordingly, the Visitor Center account was subsequently developed in late 2003, and funded in 2004 by some of the existing WBGI investors, to provide the funds for that construction, reaching approximately $220,000 in the account, $20,000 of which was later legitimately used to hire an attorney to obtain a required "special use permit" before construction could commence. Thereafter, the remaining balance was drained by the Francik board to fund its fraudulent litigations against the Tolman board members, including defendant herein.

12.    As the sell-off of the WBGI land-holdings continued in order to fund the Francik Board litigations, they encountered a default Judgment that had been earlier allowed by the original board. This was for the monies owed to defendant herein Wagner, which had been placed as a lien on one of the major parcels to preclude it from being sold off. Because they were desperate for cash to pay their attorneys, they sought to have that default Judgment vacated, and the case re-opened, utilizing their frauds and lies, in order to sell-off that 180-acre parcel. Thus, in 2006 they became involved in yet a third litigation (Hawaii, Civ-04-1-232, *Wagner v. WBGI*) involving defendant herein Wagner. The default judgment was not being litigated up until that time, having instead been initially taken by consent of the original board without litigation. The default judgment was for the back-wages earned by plaintiff-therein Wagner between 1995 and 2003, but not collected.

13.    In order to re-open that June 2004 *Wagner v. WBGI* case they fraudulently backdated when Kenneth Francik and Annette Emerson became WBGI corporate officers to August 2003, fraudulently proclaiming that neither plaintiff therein Wagner nor Linda Wagner were authorized corporate officers at the time of obtaining that default judgment, falsely claiming instead that they had been replaced as corporate officers in August 2003 at a partnership meeting.  The trial court was sufficiently swayed by Judge Nakamura's judge *pro-tempore* Tom Yeh, serving as WBGI's attorney, that he ignored the evidence, and allowed the case to be re-opened.  That case is still currently pending before judge Hara some nine years after it was initially filed, though he now has a very different feel for the Francik Board and their lies.  It's next hearing is scheduled for May 31, 2013 on a motion for a stay pending outcome of the request for appointment of a Receiver in the pending federal action of *Wagner v. Michie, Francik, WBGI et al.* (US District Court, Utah, Civil No. 2:11-cv-784-RJS-PMW).

14.    The claim by Kenneth Francik to Judge Hara, in order to have that case re-opened, that he (Francik) had become a WBGI officer in August 2003 (President) and that Annette Emerson had become the other WBGI officer in August 2003 (Secretary/Treasurer), and that Walter Wagner and Linda Wagner were not WBGI officers when initially appearing before Judge Hara in June 2004 is not supported whatsoever by any documentation (minutes, memoranda, corporate records, Secretary of State records for Nevada, etc.).  Contrarily, there is extensive written documentation that the WBGI corporate officers were Walter Wagner as its President and Linda Wagner as its Secretary/Treasurer until long after they appeared before judge Hara and obtained that default judgment.

7

15.    Specifically, the first appearance of Annette Emerson as seeking a position with WBGI on the Nevada Secretary of State records for the corporation was in March 2004 when she requested permission from Walter Wagner, as its President, to become the Registered Agent for service of process.    This is a single page document that contains the signature of Emerson seeking the position and the signature of Wagner, as WBGI's President, accepting.    Thereafter, in June 2004 she unilaterally filed a document without any corporate authority by an existing corporate officer to sign herself in, appointing herself as the WBGI treasurer, replacing Dan Perkins (who had been appointed in February 2004 to replace Linda Wagner in that position).    She left blank on that form the positions for President and Secretary, who were at that time Walter Wagner and Linda Wagner, respectively.    Not until September 2004 did WBGI file a document that purported to replace the Wagners as corporate officers, which was several months after Walter Wagner obtained that July 2004 default judgment from Judge Hara by way of his June 2004 filing seeking such.    Of course Walter Wagner and Linda Wagner were recognized as the original corporate officers in the Articles of Incorporation filed in Nevada in 2001 (and they were also the officers of WBGI for the articles of incorporation in Utah in 1995).

16.    After re-opening the *Wagner v. WBGI* case by fraud, the Francik Board sought and obtained a release on the lien, and promptly sold that 180-acre Rainforest Parcel owned by WBGI, that had been protected from sale by the lien placed thereon by Walter Wagner. The sale was in violation of the corporate By-Laws that required a clear majority of the issued shares to vote to approve any sale of land.  No such vote was conducted, and instead it was simply approved by the Francik Board

8

without shareholder involvement, even though it was the 'heart' of the botanical garden project, and constituted 60% of its land holdings, and was one of the main reasons the shareholders had invested in WBGI. The sale was not through any public offering, but instead was by way of 'private placement' to one of Francik's friends. The sale price was for less than for what WBGI had paid for the bare land, notwithstanding the fact that WBGI had spent approximately $1,000,000 on developing that parcel during the tenure of the original board, including paving roads, developing other gravel roads, planting extensive landscaping, constructing overlooks and culverts and constructing extensive retaining walls, a large gazebo, etc. The sale netted approximately $125,000 cash to the Francik Board, far less than the approximately $1,500,000 of equity WBGI had in that parcel including the $350,000 cash down-payment, but allowing the Francik Board to continue their fraudulent litigations. Other fraudulent land sales included a 3-acre parcel to another friend of Francik, again by way of private placement without public offering or shareholder approval, as well as the 90-acre Umauma Falls parcel on which WBGI had a lease-purchase option and on which WBGI had developed with an additional approximately $1,000,000 development cost including a waterfall overlook, paved roads, extensive landscapings, etc. The Francik Board allowed a single WBGI shareholder to exercise the purchase option instead of it being exercised by WBGI, or instead being first offered to all shareholders to exercise.

17.   The Nevada case went to 'trial' in 2006. Rather than limiting the presentation at trial to solely the governance issue as to whether the Tolman Board or the Francik Board was the proper WBGI board, the Francik Board began presenting their false claim for wrongful sale of shares owned by defendant Wagner.

Defendant Wagner owned a 16.27% share interest in the project. Francik lied on the witness stand and claimed that the shares that Wagner had had sold were actually corporate treasury shares, not from Wagner's stash of his own personal shares. Witnesses that Wagner could have presented at a trial on that issue were not present in Nevada, as no monetary claims were to be presented in Nevada. Those witnesses would have been Linda Wagner, who was the Secretary/Treasurer during the relevant times, and David Adams, who was the WBGI office manager during the relevant times. They both would have presented testimony at any actual litigation of that issue that the shares being sold were clearly Wagner's shares, not WBGI corporate treasury shares, and that that fact was well known to Francik. Francik also falsely misrepresented what Wagner had done with the money. Unlike Francik's fraudulent expenditures of WBGI monies to promote his lies, Wagner donated those proceeds obtained from the sale of his shares to an entity known as World Botanical Gardens Foundation (which had come into existence in 1995, but which had not had funds with which to work until 2004-2006 by way of those donations). The Foundation then used the money to better the botanical garden, by way of providing a small salary to Wagner for two years (2004-2006) so he could continue to work at the botanical garden (which he did), as well as buying extensive amounts of materials, plants, weed-control chemicals, equipment, etc., as well as partially paying down some of the credit card loans that Wagner had made to WBGI. The entire presentation at that 'trial' by Francik was a fraud and lying, but without witnesses other than Wagner and Francik on that issue, the judge was unable to see the truth between those two parties (Wagner, who testified truthfully, and Francik who lied) and awarded a judgment based on that fraud by Francik lying about the

share sales. The Francik Board, through its attorney, prepared the document for the judge's signature notwithstanding the agreement that monetary claims would not be entertained in Nevada. No appeal directed at the facts was possible as Nevada has no appellate court, only a review court that reviews law, not factual errors by the trial court judge, and those factual errors obtained by Francik's fraud could not be adequately challenged in the context of that limited review.

18.     Subsequently, the Francik Board continued with its litigation of the two Hawaii cases. Wagner's case against WBGI, that had been reopened, went up on appeal in Hawaii when the trial court judge erroneously believed Francik's lies regarding the Promissory Notes, as well as regarding their fraudulently claimed status as WBGI corporate officers in 2003 replacing the Wagners in 2003 instead of 2004 as actually occurred. The trial court erroneously dismissed the case in January 2008 in large part based on Francik's lies that Linda Wagner and Walter Wagner had been lying in stating they were the WBGI officers in the first half of 2004, which is what the corporate records, and Secretary of State records, show. The case was on appeal for four years, and returned to the trial court judge in 2012, and who recently scheduled a hearing on a stay motion to be heard on May 31, 2013 but now with a deeper understanding of how Francik lies and deceives.

19.     A few weeks after the erroneous dismissal of *Wagner v. WBGI*, Tom Yeh arranged for Francik to appear before the Hilo grand jury in February 2008 where he presented his lies once again regarding his fraudulent claim that Annette Emerson became the WBGI Secretary/Treasurer in August 2003, replacing Linda Wagner as that officer; not in September 2004 as is shown by the Secretary of State records for Nevada filed by Emerson. (The earlier records were filed in Nevada by

11

Walter Wagner in 2001 and 2004 showing Walter Wagner and Linda Wagner as the corporate officers.  Later in March 2004 Emerson filed that document, signed also by Walter Wagner as President of WBGI, showing Emerson as the new Registered Agent for service of process.)  No written documents were tendered to that grand jury, and based solely on Francik's perjured testimony, an indictment was issued setting forth false felony claims of "identity theft" for purportedly stealing the identity of being a corporate officer while not such an officer, and "attempted theft" for Walter Wagner and Linda Wagner appearing before judge Hara as WBGI's officers in support of the default judgment he had entered.  The documents supporting the actual facts showing Emerson did not replace Linda Wagner as a WBGI corporate officer until September 2004 are now filed in the parallel federal case for tort fraud, *Wagner v. WBGI*, currently pending in US District Court, Utah, Civil No. 2:11-cv-RJS-PMW, the honorable Robert J. Shelby presiding.

20.    Based on that indictment, judge Nakamura the next day issued a bench warrant for the arrest of Walter Wagner and Linda Wagner, but did not exercise on it, even though both Walter Wagner and Linda Wagner continued to appear in his courtroom on pre-trial motions that were then pending in *WBGI v. Wagner*.

21.    Two months later, in April 2004 the *WBGI v. Wagner* case came to "trial".  It did not commence until late in the first day.  At the start of the second day, Linda Wagner was present for the first time (as an intended witness).  Approximately ½ hour after her appearance at 8 AM, judge Nakamura exercised on the warrant he had been holding for two months.  Acting on cue with the sheriff's agents waiting outside the courtroom, he stood up, announced he was taking a short break, and exited the courtroom through his chamber doors.  At the same time, the sheriff's

agents entered his courtroom, proceeded to the front, and arrested Linda Wagner

where she sat based on the warrant issued by the criminal fraud of Francik falsely

claiming Linda Wagner had been replaced by Emerson as a corporate officer in

2003. Absent a judge to whom to make a request for a continuance, Walter Wagner

then also left the courtroom to post the bail for Linda Wagner. Shortly afterwards,

judge Nakamura resumed the "trial" absent both Wagners. A few hours later, after

posting Linda Wagner's bail, Walter Wagner returned to the courtroom but found it

empty, with the "trial" having concluded minutes earlier. Neither of the Wagners

had been allowed to present witnesses, hear testimony, or cross-examine WBGI's

witnesses, save for a partial cross-examination of Francik that was interrupted by

the illegal arrest of Linda Wagner. Two years later, in 2010 the indictment was

dismissed after extensive evidence was presented showing that Francik had lied to

the grand jury, including presenting of the Secretary of State documents showing

Linda Wagner continuously as a WBGI corporate officer until September 2004 and

not replaced in August 2003 by Emerson as falsely claimed by Francik's lies to the

grand jury.

22.     The facts of the case, had they been presented by the Wagners as they would

have, had they not been arrested and removed from the courtroom, would have

showed that all of the expenditures by WBGI during their tenure (1995-2004) as

corporate officers were for legitimate WBGI expenses, approved by the original

board and the shareholders at the annual meetings, and that the Wagners did not

receive any form of unjust compensation, but rather that Walter Wagner was owed

substantial sums for the monies he had loaned to WBGI, which are the subject of the

pending suit in Hawaii. Moreover, the facts would have shown that Walter Wagner

received approval from the corporate board and from the partnership board to sell some of his personal shares as a means of offsetting the WBGI failure to timely begin repaying the monies he had loaned to WBGI. They would have further shown that Wagner in fact sold only his own shares, not corporate treasury shares as falsely claimed by Francik, and that his corporate share count was properly reduced in the corporate master data base by the then managing officer, David Adams, in accordance with the share sales he had effected. The facts would have also shown that Wagner donated those proceeds to the World Botanical Gardens Foundation, and the monies were then used for the betterment of the botanical garden by purchasing equipment, materials, supplies, plants, etc. and for payment of two years of a modest annual salary (comparable to his earned annual salary during the preceding decade but never actually received) so that Wagner could continue to work on developing the botanical garden in Hawaii, and used towards partial repayment of the credit card loans he had made to WBGI so those credit cards did not fall in arrears.

23.    Defendant Wagner incorporates by reference all of his allegations of his parallel pending federal action, *Wagner v. Michie, Francik, WBGI et al.*, Civil No. 2:11-cv-784-RJS-PMW. Defendant Wagner also incorporates by reference all of the sworn affidavits filed therein, including the single affidavit of Preston Michie, and asks this court to take judicial cognizance of the fact that that case has been submitted on a request for appointment of a receiver with no rebuttal evidence whatsoever to contest any of the facts set forth by way of those affidavits, which fully support the above accounting of events leading to the generation of the fraudulently obtained judgments sought for non-dischargeable status, and that

14

those affidavits fully support a finding of extensive frauds worked upon the courts by the WBGI agents. It is further requested that this Court take judicial cognizance that those affidavits fully show that no judgments of any form should have been entered against defendant Wagner herein, and they were only entered due to the extensive criminal frauds worked by Francik and his cronies.

RESPONSES TO ALLEGED CAUSES OF ACTION

RESPONSE TO THE FIRST CAUSE OF ACTION

24.   Defendant denies all of the allegations of the first cause of action, save any allegations of correct statement of law.

RESPONSE TO THE SECOND CAUSE OF ACTION

25.   Defendant denies all of the allegations of the second cause of action, save any allegations of correct statement of law.

RESPONSE TO THE THIRD CAUSE OF ACTION

26.   Defendant denies all of the allegations of the third cause of action, save any allegations of correct statement of law.

RESPONSE TO THE FOURTH CAUSE OF ACTION

27.   Defendant denies all of the allegations of the third cause of action, save any allegations of correct statement of law.

AFFIRMATIVE DEFENSES

28.   These identical judgments have been previously discharged in that bankruptcy filing *in re Linda Wagner*, Bankruptcy Case No. 10-34227, and there is a valid presumption that they are able to obtain dischargeable status.

29.   Defendant Wagner was deceived by plaintiff's fraud into believing that the Nevada suit would be solely about making a determination as to which of two

15

competing boards of directors was properly constituted, and that no monetary claims would be presented.   Accordingly, defendant Wagner was fraudulently deceived into not bringing to that distant court (2,000 miles from his residence, and from his witnesses residences) witnesses who would have provided ample testimony that none of the monetary claims being presented by plaintiff herein were valid, and in particular that defendant Wagner herein sold only his own property (his share ownership in the gardens), not corporate treasury shares as fraudulently set forth in the "judgment" document.  This testimony would also have shown that the purchasers of his shares were not deceived, in that the monies obtained from their sale were donated to the World Botanical Gardens Foundation and used for the betterment of the botanical garden, as the purchasers were told the funds would be so used.  Further, the purchase documents clearly stated that they were purchasing shares donated to the World Botanical Gardens Foundation by the founder of the corporation.  This deception by plaintiff was a fraud worked on both the Nevada court and defendant Wagner (and the other named defendants).  But for those frauds by plaintiff, no monetary judgment would have been entered against defendant Wagner.  Further, WBGI's agent Kenneth Francik gave perjured and false testimony for the purpose of deceiving the Nevada court, falsely claiming that defendant Wagner sold corporate treasury shares when Francik had full scienter that defendant Wagner was selling his own personal shares donated to the Foundation, because Francik had been one of the persons giving permission to Wagner to sell his shares, and because Francik was being kept informed by David Adams of those ongoing share sales, to which Francik made no objection.

16

30.    Defendant Wagner was defrauded in the Hawaii case by the criminal activity of WBGI's agent Kenneth Francik, who lied to a Hilo grand jury to fraudulently obtain a false arrest warrant which Francik then caused to be executed at the alleged "trial" by colluding with the trial court judge to have it exercised at that time and not earlier.  By removing Linda Wagner from the courtroom, who was the WBGI corporate Secretary/Treasurer during the time periods at issue, defendant Wagner's chief witness was prevented from testifying by the fraud worked by plaintiff's agent Francik.  Likewise, defendant Wagner himself was prevented from testifying by the requirement that he leave the courtroom to post the bail for his chief witness, and following his return much later in the day, the "trial" had been concluded without any defense testimony or defense cross-examination of plaintiff's witnesses.

31.    As a consequence of that fraud worked on judge Nakamura and defendant Wagner, no actual litigation of facts occurred in the Hawaii case.  Had the facts been litigated, they would have clearly shown that there was no basis in fact for any form of monetary judgment against defendant Wagner, as more fully detailed in the pending parallel federal action, *Wagner v. Michie, Francik, WBGI et al.*, Civil No. 2:11-cv-784, all of which allegations defendant Wagner again incorporates by reference showing that there was no factual basis for any of the claims or monetary awards under the Hawaii "Judgment".  Though an appeal was filed, it was dismissed for spurious reasons, following the self-recusal of the original panel two years after filing of the appeal, without being heard.

32.    Defendant Wagner incorporates by reference all of the factual assertions made in the *Affidavit of Walter L. Wagner in Support of Stay of Proceedings* filed

herein as if they were set forth at length in full as additional affirmative defenses or in support of these enumerated affirmative defenses.

33. Defendant Wagner requests that this Court follow *Federal Rules of Evidence, Rule 301* and the notes of the Advisory Committee and determine that the presumption raised by the sworn affidavits in the pending federal action *Wagner v. Michie, Francik, WBGI, et al.*, Civil No. 2:11-cv-784) is that the judgments are fraudulent, and obtained by the numerous frauds of Francik, WBGI, et al. because those detailing of frauds by those several sworn affidavits were not rebutted.

33. Defendant Wagner asserts as affirmative defenses any additional defenses that might be raised based on the allegations of the pending federal action, Civil No. 2:11-cv-784 and the uncontested sworn affidavits filed therein.


<u>PRAYER FOR RELIEF</u>

WHEREFORE, defendant Wagner prays that this Court recognize the extensive frauds worked upon the Hawaii and Nevada courts by WBGI and its agents, and allow the discharge of these fraudulently obtained judgments. Defendant Wagner also prays for his costs of suit, for his attorney's fees, and for such other and further relief as the Court deems just.

DATED:     April 11, 2013



Walter L. Wagner