Arnold Richer - 2751
Patrick F. Holden - 6247
**RICHER & OVERHOLT P.C.**
901 West Baxter Drive
South Jordan, UT 84095
Telephone: (801) 561-4750 x15
Facsimile: (801) 561-4744
Email: aricher@richerandoverholt.com

Attorneys for World Botanical Gardens, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| In re:<br><br>WALTER L. WAGNER,<br><br>          Debtor. | Bankruptcy Case No. 12-35494<br><br>Chapter 7<br><br>Honorable Joel T. Marker |
|---|---|
| WORLD BOTANICAL GARDENS, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>WALTER L. WAGNER,<br><br>          Defendant. | **RESPONSE AND MEMORANDUM IN OPPOSITION TO MOTION FOR STAY**<br><br>Adversary Proceeding No. 13-02099<br><br>(Filed via ECF) |

       Plaintiff World Botanical Gardens, Inc. ("Plaintiff" or "WBGI"), by and through its counsel,

hereby submits its Response and Memorandum in Opposition to Defendant and Debtor Walter L.

Wagner's Motion for Stay.

## INTRODUCTION

The Adversary Proceeding herein was initiated by World Botanical Gardens, Inc. ("WBGI")

against Debtor and Defendant Walter Wagner ("Wagner"). WBGI seeks a determination that certain

debts owed by Wagner under two final Judgments in favor of WBGI are nondischargeable. Wagner

asks this Court to issue a stay of the Adversary Proceeding based on a separate case currently before

the United States District Court for the District of Utah.

That case is captioned <u>Wagner v. Michie et. al.</u>; Case No. 2:11-cv-784-RJS. In that case,

Wagner alleged state law defamation claims as well as fraud, waste and mismanagement claims

against WBGI and certain individual members of WBGI's Board of Directors ("Board Members").

In addition, Wagner requested the appointment of receiver for WBGI.

Wagner's Motion for Stay should be denied because: (1) the resolution of <u>Wagner v. Michie</u>

<u>et. al.</u> has no bearing on this Court's resolution of the Adversary Proceeding; and (2) Judge Robert

J. Shelby dismissed all of Wagner's claims with prejudice.

## PROCEDURAL HISTORY IN WAGNER V. MICHIE ET. AL. IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

1.      On August 29, 2011, Wagner filed his Complaint, Case No. 2:11-cv-784-RJS,

alleging defamation as well as fraud, waste and mismanagement against WBGI and the Board

Members. [Docket, No. 1]

2.      On November 7, 2011, WBGI filed a Motion to Dismiss Wagner's Complaint.

[Docket, No. 5]

3.      On March 5, 2012, Magistrate Judge Paul M. Warner issued a Report and

Recommendation which denied WBGI's Motion to Dismiss without prejudice. [Docket, No. 30] A true and correct copy of the Report and Recommendation is attached hereto as Exhibit "A" and incorporated herein by reference.

  4.  On April 4, 2012, WBGI filed a second Motion to Dismiss on behalf of both WBGI and the Board Members. [Docket, No. 39]

  5.  On April 5, 2012, WBGI filed a Motion to Stay any proceedings remaining after its Motion to Dismiss. [Docket, No. 41]

  6.  On November 5, 2012 , Magistrate Warner declined Wagner's request to appoint a receiver for WBGI. [Docket, No. 74] A true and correct copy of the Order is attached hereto as Exhibit "B" and incorporated herein by reference.

  7.  On November 5, 2012, in a second Report and Recommendation, Magistrate Warner granted WBGI's second Motion to Dismiss and Motion to Stay. [Docket, No. 75] A true and correct copy of the second Report and Recommendation is attached hereto as Exhibit "C" and incorporated herein by reference.

  8.  Wagner filed objections to both Reports and Recommendations. [Docket, Nos. 76 and 77]

  9.  On April 22, 2013, United States District Court Judge Robert J. Shelby issued a Memorandum Decision and Order dismissing all of Wagner's claims. [Docket, No. 86] A true and correct copy of the Memorandum Decision and Order is attached hereto as Exhibit "D" and incorporated herein by reference.

## ARGUMENT

### POINT I

### WAGNER'S MOTION FOR STAY SHOULD BE DENIED BECAUSE WAGNER'S DEFAMATION CLAIMS ARE INDEPENDENT FROM THE ADVERSARY ACTION.

The United States Supreme Court has long recognized that:

> [t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for the litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. North American Company, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

See also Khadr v. Bush, 587 F.Supp.2d 225, 229 (D.D.C. 2008)(internal citations and quotations

omitted)("Resolving a motion to stay or to hold a matter in abeyance pending the outcome of a

related or parallel proceeding turns upon the unique circumstances of the case, and is largely a matter

of discretion for the court. A court may grant such a motion if it finds that [i]n the interests of

judicial economy and avoiding unnecessary litigation a stay is appropriate.")

Here, a stay is inappropriate because the proceedings are not related or parallel. The

Adversary Action arose out of Wagner's filing for relief under Chapter 7 of the Bankruptcy Code.

WBGI, a creditor of Wagner, filed the Adversary Proceeding seeking a determination that certain

Judgments WBGI had previously obtained against Wagner were nondischargeable. At issue is the

proper characterization of the Judgments under 11 U.S.C. § 523.

Conversely, Wagner's tort case against WBGI and the Board Members asserts state law

defamation claims as well as fraud, waste and mismanagement claims. WBGI asserted issue

preclusion as a defense based on the Judgments at issue in the Adversary Proceeding. This, however, does not render the proceedings parallel or related such that a stay is warranted. The applicability of issue preclusion is a separate analysis from whether a particular judgment arose out of securities violation or fraud. The resolution of one does not affect the other. Therefore, Wagner's Motion for Stay should be denied.

## POINT II

### WAGNER'S CLAIMS HAVE ALL BEEN DISMISSED WITH PREJUDICE ELIMINATING ANY POTENTIAL NEED TO STAY THE ADVERSARY ACTION.

Judge Shelby affirmed Magistrate Warner's dismissal of Wagner's claims. In addition, Judge Shelby dismissed those claims that Magistrate Warner had merely stayed. Thus, there are no claims pending before the District Court. Not only were Wagner's claims dismissed, Judge Shelby questioned the good faith of Wagner's claims. See Decision, pg. 7 ("The court is convinced that this case has been filed for the purpose of harassing the Defendants.")

Judge Shelby adopted "all of Judge Warner's recommendations except for one. The court sees no reason to stay the case until resolution of the First Hawaii decision because the court finds ample reasons to dismiss the case immediately." [Decision, pg. 6] Judge Shelby went on to note that "[t]he court is convinced that this case has been filed for the purpose of harassing the Defendants." [Decision, pg. 7] In addition, Judge Shelby stated that "[t]he number of instances of Mr. Wagner's fraudulent conduct, false representations, and unauthorized actions listed by both the Second Hawaii court and the Nevada court are too legion to list here." [Decision, pg. 7]

Not only are Wagner's tort claims not a parallel or relate proceeding, they have also been dismissed. In light of this development, there is no basis to stay the Adversary Proceeding.

## POINT III

### WAGNER'S REQUEST TO APPOINT A RECEIVER WAS REJECTED.

Wagner also contends that this Court should stay this matter based on the potential that a receiver would be appointed for WBGI. However, Magistrate Warner rejected Wagner's request for the appointment of a receiver and Judge Shelby affirmed Magistrate Warner's rulings. Thus, Wagner's request to stay the Adversary Proceeding to the extent it was based on the imminent appointment of a receiver is without merit.

## CONCLUSION

For the foregoing reasons, WBGI respectfully requests that the Court deny Wagner' Motion for Stay.

DATED this 25 day of April, 2013.

RICHER & OVERHOLT, P.C.

Arnold Richer
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **RESPONSE AND**

**MEMORANDUM IN OPPOSITION TO MOTION FOR A STAY** to be delivered to the

following in the manner and on the date below indicated:


[X] Mail                          Walter Wagner
[ ] Fax                           532 N 700 E
[ ] Email                         Payson, Utah 84651
[ ] Hand Delivery                 (Pro Se Appearance)

DATED this **2 5** day of April, 2013.


_____
Arnold Richer, Attorney for Plaintiff

Exhibit "A"

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WALTER L. WAGNER,<br><br>**Plaintiff,**<br><br>v.<br><br>PRESTON MICHIE; KENNETH FRANCIK; LESLIE COBOS; MARK ROBINSON; ANNETE EMERSON; STEVE BRYANT; and WORLD BOTANICAL GARDENS, INC., a Nevada corporation,<br><br>**Defendants.** | **REPORT AND RECOMMENDATION**<br><br>Case No. 2:11-cv-784-CW-PMW<br><br><br>**District Judge Clark Waddoups**<br><br>**Magistrate Judge Paul M. Warner** |

District Judge Clark Waddoups referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  Before the court are (1) World Botanical Gardens, Inc.'s ("WBGI") motion to dismiss[2] and (2) Walter L. Wagner's ("Walter Wagner" or "Wagner") motion for preliminary injunctive relief.[3]  The court has carefully reviewed the written memoranda submitted by the parties.  Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is

---

[1] *See* docket no. 9.

[2] *See* docket no. 5.

[3] *See* docket no. 10.

not necessary and will determine the motions on the basis of the written memoranda. *See*

DUCivR 7-1(f).

As an initial matter, the court notes that Wagner is proceeding pro se in this case.

Accordingly, the court will construe his pleadings and other submissions liberally. *See, e.g.,*

*Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). At the same time, however, it

is not "the proper function of the district court to assume the role of advocate for the pro se

litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## BACKGROUND

Most of the following background information is taken from the complaint and

documents that are either attached to or referenced in the complaint. Accordingly, they can

properly be considered by the court in deciding WBGI's motion to dismiss. *See GFF Corp. v.*

*Associated Wholesale Grocers*, 130 F.3d 1381, 1384-85 (10th Cir. 1997).

In addition, the court grants WBGI's request for the court to take judicial notice of three

state court decisions, the contents of which will be referenced in the following factual

background. The court recognizes that rule 12(d) of the Federal Rules of Civil Procedure

generally requires a court to treat a motion to dismiss as a motion for summary judgment when

matters outside the complaint are considered. *See* Fed. R. Civ. P. 12(d). However, since the

three state court decisions are the type of public records that are subject to judicial notice, the

court's consideration of them does not require the court to treat WBGI's motion to dismiss as a

motion for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

322 (2007); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004);

*City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1251 n.4 (10th Cir. 2001); *Van*

*Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).

Wagner is a former officer and shareholder of WBGI. In his amended complaint in this

case, Wagner has brought six causes of action against WBGI and other individuals. Wagner

alleges claims for slander and libel against WBGI on three different topics: record-keeping,

misappropriation of WBGI funds, and a 2004 promissory note ("2004 Note"). Wagner also

alleges a claim against WBGI for fraud, waste, and mismanagement.

As indicated above, the court is taking judicial notice of three state court decisions

involving Wagner that are related to this case. The three state court decisions are:

1. *World Botanical Gardens, Inc. v. Walter Wagner, et al.*; Second Judicial District for the State of Nevada, Washoe County; Case No. CV05-02079; dated October 2, 2006 ("Nevada Decision" or "Nevada Court").

2. *Walter Wagner v. World Botanical Gardens, Inc.*; Third Circuit Court for the State of Hawaii; Civil No. 04-1-0232; dated November 13, 2007 ("First Hawaii Decision" or "First Hawaii Court").

3. *World Botanical Gardens, Inc. v. Walter Wagner, et al.*; Third Circuit for the State of Hawaii; Case No. 05-1-0210; dated October 9, 2008 ("Second Hawaii Decision" or "Second Hawaii Court").

<u>Nevada Decision</u>

WBGI sued Wagner in Nevada state court to obtain an injunction against Wagner's

ongoing interference with WBGI's operations. After a three-day trial, the Nevada Court entered

the Nevada Decision. The Nevada Decision described "a relentless conspiracy and campaign by

3

Defendant Walter Wagner and the other Remaining Defendants to gain control of WBGI at any

cost."[4]  The Nevada Court found that Wagner:

> had diverted funds to his personal accounts, failed to keep proper
> financial records, . . . failed to pay employment taxes, failed to file
> corporate income tax reports, [and] failed to keep accurate records
> of shareholders.  [WBGI board members] also discovered the
> Internal Revenue Service had placed a lien on WBGI's real
> property to secure payment of overdue payroll taxes.[5]

The Nevada Court also ruled that Wagner "intentionally and illegally engaged in a fraudulent

scheme to sell shares of WBGI stock to unsuspecting purchasers."[6]  Based on its findings of fact,

the Nevada Court ruled that "[t]he removal of Defendant Walter Wagner from the WBGI Board

of Directors was proper."[7]  The Nevada Court also found that "[f]rom Defendant Walter

Wagner's removal through the present, the WBGI Board of Directors has properly managed the

business and affairs of WBGI."[8]

   The Nevada Court entered a permanent injunction against Wagner ordering him to cease

creating or participating in an alternate board of directors, interfering with WBGI's business

---

[4]  Docket no. 7, Exhibit A at 4.

[5]  *Id.* at 2-3.

[6]  *Id.* at 7.

[7]  *Id.* at 9.

[8]  *Id.* at 6.

affairs, altering signature cards of WBGI bank accounts, or attempting to sell WBGI property.[9]
WBGI has not indicated whether the Nevada Decision was or is on appeal.

### First Hawaii Decision

Wagner sued WBGI seeking recovery of "deferred salary" in the form of the 2004 Note.
WBGI purportedly executed the 2004 Note (and prior notes referenced in the 2004 Note) in favor
of Wagner in the amount of $340,736.75. The First Hawaii Court found that the "promissory
notes are fabrications" and that "Wagner's own statements to the Court also constitute
admissions that the promissory notes are fabrications."[10] The First Hawaii Court ultimately ruled
that "[t]he 2004 [Note] . . . was fraudulently created."[11] In addition, the First Hawaii Court stated
that "Wagner has engaged in a course and pattern of fraud dating to the period before WBGI was
incorporated."[12] Among Wagner's conduct identified by the court was the following: signing
promissory notes as an officer of a nonexistent corporation, signing promissory notes without
shareholder approval, concealing information about the promissory notes and the lawsuit from
WBGI's shareholders and directors, and making fraudulent representations to the court in order
to induce the entry of a default judgment.[13]

---

[9] *See id.* at 10-11.

[10] *Id.*, Exhibit B at 11-12.

[11] *Id.* at 16.

[12] *Id.* at 19.

[13] *Id.* at 19-20.

According to WBGI, Wagner has appealed the First Hawaii Decision, and that appeal is
pending before the Hawaii Intermediate Court of Appeals.

### Second Hawaii Decision

WBGI initiated this case against Wagner to recover corporate funds Wagner
misappropriated and converted for his personal use. The Second Hawaii Court issued extensive
findings of fact, conclusions of law, and an order detailing Wagner's conduct. The Second
Hawaii Court ruled that Wagner "diverted WBGI funds [for] personal purposes. These included
funds for [a] personal mortgage, property tax payments[,] personal credit card payments[,] and
for debts incurred to creditors for personal expenditures."[14] The Second Hawaii Court found that
Wagner mischaracterized corporate funds as loans, business expenses, and salary.[15]

The Second Hawaii Court went on to find Wagner guilty of abuse of process and
malicious prosecution, and declared Wagner a vexatious litigant for "relitigating or attempting to
relitigate in propria persona and in bad faith the validity of final determinations in Nevada
adverse to defendants involving WBGI who prevailed on all issues in dispute."[16]

According to WBGI, Wagner appealed the Second Hawaii Decision, and it was affirmed
by the Hawaii Intermediate Court of Appeals. WBGI has further indicated that Wagner has filed
a petition for certiorari with the Hawaii Supreme Court for review of that decision.

---

[14] *Id.*, Exhibit C at 6.

[15] *See id.* at 6-7.

[16] *Id.* at 46; *see id.* at 45-47.

6

## ANALYSIS

As noted above, the motions before the court are (1) WBGI's motion to dismiss and (2) Wagner's motion for preliminary injunctive relief. The court will address the motions in turn.

### I. WBGI's Motion to Dismiss

WBGI's motion seeks dismissal of Wagner's complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under rule 12(b)(6), the court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Wagner alleges claims for defamation against WBGI on the following topics: record-keeping, misappropriation of WBGI funds, and the 2004 Note. Wagner also alleges a claim against WBGI for fraud, waste, and mismanagement. The court will first address the defamation claims, then it will address the fraud, waste, and mismanagement claim.

7

## A. Defamation Claims

Before addressing the specifics of Wagner's defamation claims against WBGI, the court

must address a threshold issue. WBGI argues that all of Wagner's defamation claims are barred

by the three state court decisions discussed above pursuant to the doctrine of issue preclusion,

which is also known as collateral estoppel. Accordingly, the court must address which forum's

law applies in determining the preclusive effect of the three state court decisions.

"A federal court sitting in diversity . . . must apply the substantive law of the forum state,

including its choice of law rules." *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997).

Accordingly, the court must apply Utah law to determine the preclusive effect of the three state

court decisions. Utah courts "apply the 'most significant relationship' approach as described in

the Restatement (Second) of Conflict of Laws in determining which state's laws should apply to

a given circumstance." *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002).

"[T]he particular factors considered in determining the 'most significant relationship' vary

according to the type of action brought." *Id.*

In this case, the issue presented is the preclusive effect of the three state court judgments.

It does not appear that Utah courts have addressed this particular issue. However, the Supreme

Court has indicated that "[i]t is now settled that a federal court must give to a state-court

judgment the same preclusive effect as would be given that judgment under the law of the State

in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S.

75, 81 (1984). Moreover, the Tenth Circuit has stated that "[f]ederal courts must apply the law

of the state rendering the judgment to determine its collateral estoppel effect; we may not accord

8

greater preclusive effect to a state court judgment than would the state in which the judgment is

rendered." *Amoco Prod. Co. v. Heimann*, 904 F.2d 1405, 1417 (10th Cir. 1990).

Pursuant to those authorities, the court concludes that Utah courts would likely apply the

rendering state's law to determine the preclusive effect of decisions from that state's courts.

Accordingly, the preclusive effect of the three state court decisions will be determined under the

state law of the court rendering each decision.

The court now turns to addressing the merits of Wagner's defamation claims. As

indicated above, WBGI argues that all of those claims are barred under the doctrine of issue

preclusion.

### 1. Record-Keeping

WBGI argues, under the doctrine of issue preclusion, that the Nevada Decision precludes

Wagner from relitigating his defamation claims related to record-keeping. Under Nevada law,

> the following factors are necessary for application of issue
> preclusion: ([a]) the issue decided in the prior litigation must be
> identical to the issue presented in the current action; ([b]) the initial
> ruling must have been on the merits and have become final; . . .
> ([c]) the party against whom the judgment is asserted must have
> been a party or in privity with a party to the prior litigation; and
> ([d]) the issue was actually and necessarily litigated.

*Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (quotations, citation, and

footnote omitted) (third alteration in original).

### a. Identical Issues

The issue decided by the Nevada Court was and is identical to the issue Wagner presents

in this litigation, namely Wagner's poor record-keeping as an officer of WBGI. Wagner's

9

defamation claims are based on the assertion that WBGI stated that Wagner kept poor

shareholder records while in control of WBGI and that Wagner's poor record-keeping resulted in

an incomplete list of all WBGI shareholders.

The Nevada Court directly addressed the issue of Wagner's poor record-keeping when it

stated that Wagner

> had diverted funds to his personal accounts, failed to keep proper
> financial records, . . . failed to pay employment taxes, failed to file
> corporate income tax reports, [and] failed to keep accurate records
> of shareholders. [WBGI board members] also discovered the
> Internal Revenue Service had placed a lien on WBGI's real
> property to secure payment of overdue payroll taxes.[17]

The Nevada Court also ruled that Wagner "intentionally and illegally engaged in a fraudulent

scheme to sell shares of WBGI stock to unsuspecting purchasers."[18]  Based on its findings of fact,

the Nevada Court ruled that "[t]he removal of Defendant Walter Wagner from the WBGI Board

of Directors was proper."[19]  The Nevada Court also found that "[f]rom Defendant Walter

Wagner's removal through the present, the WBGI Board of Directors has properly managed the

business and affairs of WBGI."[20]

Based on the foregoing, the court concludes that the issue decided by the Nevada Court

related to Wagner's poor record-keeping is identical to the issue presented in this case.

---

[17]  *Id.*, Exhibit A at 2-3.

[18]  *Id.* at 7.

[19]  *Id.* at 9.

[20]  *Id.* at 6.

### b. Final Judgment on the Merits

Other than making the conclusory assertion that the Nevada Decision was on the merits

and is final, WBGI has not provided the court with any proof that the Nevada Decision is indeed

final. Not only has WBGI failed to provide the court with the standard for finality of a judgment

for purposes of issue preclusion under Nevada law, it has also failed to indicate whether the

Nevada Decision was or is on appeal. Under those circumstances, the court cannot conclude that

the Nevada Decision is final for purposes of issue preclusion.

### c. Party or Party in Privity

The party against whom the Nevada Decision is asserted, Wagner, was a party to the case

decided by the Nevada Court. Accordingly, this element is satisfied.

### d. Issue Actually and Necessarily Litigated

After a three-day trial, the Nevada Court entered the Nevada Decision. As noted above,

the record-keeping issue addressed by the Nevada Court is the same issue presented in this case.

Indeed, the Nevada Court explicitly referred to the issue in its findings of fact. For these reasons,

the court concludes that the issue of Wagner's record-keeping was actually and necessarily

litigated.

### e. Conclusion

WBGI has satisfied three of the elements of issue preclusion on the issue of Wagner's

record-keeping. The only element that WBGI has failed to establish is the finality of the Nevada

Decision. Consequently, the court cannot conclude, at this point, that Wagner's claims related to

record-keeping are barred by issue preclusion. As such, this portion of WBGI's motion should

11

be denied without prejudice. If WBGI can demonstrate that the Nevada Decision is final, WBGI

should be allowed to renew its motion to dismiss Wagner's claims related to record-keeping.

## 2. Misappropriation of WBGI Funds and 2004 Note

WBGI argues, again under the doctrine of issue preclusion, that the First Hawaii Decision

and the Second Hawaii Decision preclude Wagner from relitigating his defamation claims

concerning the misappropriation of WBGI funds and the 2004 Note. Under Hawaii law,

> the test for collateral estoppel has four elements: ([a]) the fact or
> issue in the present action is identical to the one decided in the
> prior adjudication; ([b]) there was a final judgment on the merits in
> the prior adjudication; ([c]) the parties to the present action are the
> same or in privity with the parties in the prior action; and ([d]) the
> fact or issue decided in the prior action was actually litigated,
> finally decided, and essential to the earlier valid and final
> judgment.

*Smallwood v. City & Cnty. of Honolulu*, 185 P.3d 887, 895 (Haw. Ct. App. 2008).

### a. Identical Issues

The Second Hawaii Decision addressed Wagner's misappropriation and conversion of

WBGI funds for personal use. Wagner's defamation claim is based, in part, on allegations that

WBGI stated that Wagner embezzled funds designated for use to construct a Visitor Center.

WBGI also allegedly stated that there was no designated Visitor Center account and that Wagner

misappropriated investor funds for personal use.

These are the same issues resolved by the Second Hawaii Court. The Second Hawaii

Court found that Wagner "diverted WBGI funds [for] personal purposes. These included funds

for [a] personal mortgage, property tax payments[,] personal credit card payments[,] and for

12

debts incurred to creditors for personal expenditures."[21]  The Second Hawaii Court found that

Wagner mischaracterized funds as loans, business expenses, and salary.[22]   While the Visitor

Center is not specifically mentioned, it is encompassed within the Second Hawaii Court's global

finding of misappropriation of corporate funds.  Wagner's defamation claim is based on the view

that he did not misappropriate WBGI funds and that any such statement is false.  However, the

Second Hawaii Court found to the contrary, that is, that Wagner did in fact misappropriate WBGI

funds.

     In addition, the First Hawaii Decision resolved the issue of whether Wagner fraudulently

manufactured the 2004 Note (in addition to the prior notes incorporated into the 2004 Note).  In

this case, Wagner contends that WBGI's statement that Wagner fraudulently executed the 2004

Note was defamatory.  Wagner further alleges that WBGI's assertion that Wagner's spouse

executed the 2004 Note as an officer of WBGI, while she was in fact not an officer of WBGI,

was also defamatory.

     The First Hawaii Court resolved this issue and found that the "promissory notes are

fabrications" and that "Wagner's own statements to the Court also constitute admissions that the

promissory notes are fabrications."[23]  In addition, the First Hawaii Court ultimately ruled that

"[t]he 2004 [Note] . . . was fraudulently created."[24]  Wagner's defamation claims are based, in

---

[21]  *Id.*, Exhibit C at 6.

[22]  *See id.* at 6-7.

[23]  *Id.*, Exhibit B at 11-12.

[24]  *Id.* at 16.

part, on his assertion that the statement Wagner "fraudulently created the 2004 Note" is false.
However, that issue was already resolved by the First Hawaii Court.

Finally, the Second Hawaii Court addressed the issue of whether Wagner's spouse was a
director or officer of WBGI, which is also part of Wagner's defamation claim. The Second
Hawaii Decision provides that "Defendant Linda Wagner was neither a WBGI director nor a
WBGI officer after August of 2003. Defendant Linda Wagner has admitted in deposition
testimony that after Annette Emerson became Treasurer, she no longer had any position of
authority and was neither an officer [nor] director of WBGI."[25] Accordingly, the Second Hawaii
Court has explicitly ruled on that issue.

For these reasons, the court concludes that the issues presented in this case concerning the
misappropriation of WBGI funds and the 2004 Note are identical to the issues addressed in the
First Hawaii Decision and the Second Hawaii Decision.

### b.  Final Judgment on the Merits

WBGI asserts that the First Hawaii Decision and the Second Hawaii decision are final for
purposes of issue preclusion, even though both of those decisions are currently on appeal.
However, under Hawaii law, it appears that a judgment is not final for purposes of issue
preclusion while pending on appeal. *See Glover v. Fong*, 42 Haw. 560, 574 (Haw. 1958) ("A
judgment is final where the time to appeal has expired without appeal being taken."); *cf. Littleton
v. State*, 708 P.2d 829, 833 (Haw. Ct. App. 1985) ("[W]here an appeal has been taken, a

---

[25] *Id.*, Exhibit C at 16.

14

judgment of the trial court is not final, at least for purposes of *res judicata*."). Accordingly, the

court cannot conclude that the First Hawaii Decision and Second Hawaii Decision are final for

purposes of issue preclusion under Hawaii law.

### c. Same Parties

This element is clearly satisfied. Wagner and WBGI were parties to the cases decided by

the First Hawaii Decision and the Second Hawaii Decision.

### d. Issue Actually Litigated, Finally Decided, and Essential to the Judgment

The Second Hawaii Judgment reflects that the Second Hawaii Court conducted a two-day

trial. Wagner was present for the first day, but failed to appear when the court reconvened on the

second day of trial.[26] The Second Hawaii Court proceeded to take evidence, and after

considering that evidence, along with the papers filed by both parties, ruled against Wagner.[27]

The Second Hawaii Decision is an extensive and thorough review of the facts and circumstances

surrounding Wagner's misappropriation of funds.[28] Accordingly, the court concludes that the

issue of Wagner's misappropriation of funds was actually litigated, finally decided, and is

essential to the Second Hawaii Decision.

The First Hawaii Decision demonstrates that the First Hawaii Court conducted a hearing

at which Wagner was present. The First Hawaii Court considered all the papers filed and the

---

[26] *See id.*, Exhibit C at 1-2.

[27] *See id.* at 1-50.

[28] *See id.*

15

arguments of all parties.[29] The First Hawaii Decision is an extensive and thorough review of the

facts and circumstances surrounding the execution and attempted collection of the 2004 Note.[30]

Accordingly, the court concludes that the issue of the 2004 Note was actually litigated, finally

decided, and is essential to the First Hawaii Decision.

### e. Conclusion

WBGI has satisfied three of the elements of issue preclusion on the issues of Wagner's

misappropriation of funds and the 2004 Note. As noted above, the only element that WBGI has

failed to establish is the finality of the First Hawaii Decision and the Second Hawaii Decision.

Consequently, the court cannot conclude, at this point, that Wagner's claims related to

misappropriation of funds and the 2004 Note are barred by issue preclusion. As such, this

portion of WBGI's motion should be denied without prejudice. If and when the First Hawaii

Decision and Second Hawaii Decision become final, WBGI should be allowed to renew its

motion to dismiss Wagner's claims related to misappropriation of funds and the 2004 Note.

### B. Fraud, Waste, and Mismanagement

WBGI argues that Wagner's fraud, waste, and mismanagement claim must be dismissed.

WBGI asserts, pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure, that Wagner's

claim must be dismissed for lack of subject-matter jurisdiction because he does not have standing

to bring the claim.

---

[29] *See id.,* Exhibit B at 2.

[30] *See id.* at 1-21.

16

"Standing is a jurisdictional issue that may be raised by the court at any time." *Wilson v.*

*Glenwood Intermountain Props.*, 98 F.3d 590, 592-93 (10th Cir. 1996).

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a [motion under rule 56 of the Federal Rules of Civil Procedure].

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citations omitted). Accordingly,

this court can look to matters beyond Wagner's complaint to determine whether subject-matter

jurisdiction exists.

In his complaint, Wagner alleges that he owns an approximately 1/6th interest in

WBGI. However, Wagner has provided no evidentiary basis for this allegation. To the contrary,

the Second Hawaii Decision demonstrates that Wagner's remaining shareholder interest in

WBGI was sold to satisfy an outstanding judgment. The Second Hawaii court noted that "[o]n

July 20, 2007, a Report of Sheriff's Sale was filed, in which the sale of the shares held by

17

[Wagner] to satisfy the Nevada [Decision and] judgment was reported."[31]   The court also stated

that "[a]fter his removal from WBGI's Board of Directors, . . . Wagner lacked authority to take

any action on behalf of or to represent WBGI in any capacity, and was merely a WBGI

shareholder (. . . Wagner's shares were sold at public auction by the Washoe County, Nevada

Sheriff's Office on June 29, 2007, at which time his relationship with WBGI ended . . .)."[32]

It appears that Wagner no longer has any stake or any ownership interest in WBGI.

According to the Second Hawaii Decision, his shares were sold and he was lawfully removed

from WBGI.  As such, the court agrees with WBGI's argument that Wagner lacks standing to

bring his fraud, waste, and mismanagement claim and, therefore, that the claim should be

dismissed for lack of subject-matter jurisdiction.  Accordingly, this portion of WBGI's motion

should be granted.

## II.  Wagner's Motion for Preliminary Injunctive Relief

Along with his complaint, Wagner filed a motion for preliminary injunctive relief against

WBGI.

> To obtain a preliminary injunction, the moving party must
> establish:  (1) substantial likelihood that the movant will eventually
> prevail on the merits; (2) a showing that the movant will suffer
> irreparable injury unless the injunction issues; (3) proof that the
> threatened injury to the movant outweighs whatever damage the
> proposed injunction may cause the opposing party; and (4) a
> showing that the injunction, if issued, would not be adverse to the
> public interest.

---

[31]  *Id.*, Exhibit C at 9.

[32]  *Id.* at 18.

18

*Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1262 (10th Cir. 2005) (quotations and citation omitted).

The court has determined that Wagner has failed to demonstrate that there is a substantial likelihood that he will prevail on the merits of his claims. The court has recommended dismissal of one of Wagner's claims, and the remaining claims are barred from dismissal based only on the fact that the Nevada Decision, First Hawaii Decision, and Second Hawaii Decision do not appear to be final for purposes of issue preclusion. Once those decisions become final, and assuming for the sake of argument that the cases are resolved in WBGI's favor, Wagner's remaining claims will be subject to dismissal under the doctrine of issue preclusion.

Because the court concludes that Wagner has failed to demonstrate that he is likely to succeed on the merits of his claims, it is unnecessary for the court to address the remaining factors required for preliminary injunctive relief. Wagner's motion for preliminary injunctive relief should be denied.

## CONCLUSION AND RECOMMENDATION

In summary, **IT IS HEREBY RECOMMENDED** that:

1. WBGI's motion to dismiss[33] be **GRANTED IN PART** and **DENIED IN PART** as follows:

---

[33] *See* docket no. 5.

19

      a.      WBGI's motion to dismiss Wagner's claims related to record-keeping,

              misappropriation of funds, and the 2004 Note be **DENIED WITHOUT**

              **PREJUDICE**.

      b.      WBGI's motion to dismiss Wagner's claim for fraud, waste, and

              mismanagement be **GRANTED**.

    2.      Wagner's motion for preliminary injunctive relief[34] be **DENIED**.

* * * * *

Copies of this Report and Recommendation are being sent to all parties, who are hereby

notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties

must file any objection to this Report and Recommendation within fourteen (14) days after

receiving it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute

waiver of objections upon subsequent review.

    DATED this 5th day of March, 2012.

                      BY THE COURT:

                      PAUL M. WARNER
                      United States Magistrate Judge

---

[34] *See* docket no. 10.

Exhibit "B"

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| WALTER L. WAGNER,<br><br>**Plaintiff,**<br><br>v.<br><br>PRESTON MICHIE; KENNETH FRANCIK; LESLIE COBOS; MARK ROBINSON; ANNETE EMERSON; STEVE BRYANT; and WORLD BOTANICAL GARDENS, INC., a Nevada corporation,<br><br>**Defendants.** | **ORDER**<br><br>Case No. 2:11-cv-784-RJS-PMW<br><br><br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Paul M. Warner |

This case has been referred to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] At the outset, the court notes that Walter L. Wagner ("Plaintiff") is proceeding pro se in this case. Accordingly, the court will construe his pleadings and other submissions liberally. *See, e.g., Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

---

[1] This case was previously assigned to District Judge Clark Waddoups, *see* docket no. 8, who entered the original order of reference pursuant to 28 U.S.C. § 636(b)(1)(B). *See* docket no. 9. On October 11, 2012, the case was reassigned to District Judge Robert J. Shelby, and the order of reference was affirmed. *See* docket no. 73.

Before the court are Plaintiff's (1) renewed motion for an extension of time for service of process or, alternatively, for service of process upon the Clerk of the Court;[2] and (2) motion for appointment of a receiver for World Botanical Gardens, Inc. ("WBGI").[3]  Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written memoranda. *See* DUCivR 7-1(f).  The court will address the motions in turn.

### I.  Renewed Motion for Extension of Time for Service of Process or, Alternatively, for Service of Process Upon the Clerk of the Court

Plaintiff's amended complaint in this case was filed on October 4, 2011.[4]  Plaintiff has provided the court with timely proof of service with respect to defendant World Botanical Gardens, Inc.[5]  Subsequent to the filing of Plaintiff's instant motion concerning service, counsel for the remaining defendants named in Plaintiff's amended complaint (collectively, "Defendants") entered an appearance for Defendants by filing a motion to dismiss and supporting memorandum.[6]  In addition, Plaintiff has filed waivers of service for some of the Defendants.[7]  To date, Defendants have not raised any objections concerning service of process.

---

[2] *See* docket no. 35.

[3] *See* docket no. 59.

[4] *See* docket no. 2.

[5] *See* docket no. 4.

[6] *See* docket nos. 52, 53.

[7] *See* docket nos. 48, 50, 51.

2

Because all parties have now entered appearances in this case, and because Defendants have not raised any objections about service of process, the court concludes that Plaintiff's motion is now moot.

## II. Motion for Appointment of Receiver for WBGI

In this motion, Plaintiff seeks to have a receiver appointed for WBGI. Plaintiff's motion lacks merit.

WBGI is a Nevada corporation. Accordingly, Plaintiff's request to appoint a receiver is governed by Nevada law. Pursuant to Nevada statutory law governing the appointment of a receiver, Plaintiff's motion has been brought in the wrong court. *See* Nev. Rev. Stat. § 78.650(1). Under § 78.650(1), a shareholder must apply for appointment of a receiver in "the district court in the county in which the corporation's registered office is located." *Id.* WBGI is a Nevada corporation, with its principal place of business in Hawaii. Accordingly, this court cannot be the proper venue to entertain Plaintiff's request for appointment of a receiver.

Furthermore, even if this court could entertain Plaintiff's motion, the court would be forced to conclude that he lacks standing to bring it. Under § 78,650(1), only a shareholder who holds "one-tenth of the issued and outstanding stock" may apply for appointment of a receiver. *Id.* In a report and recommendation issued on March 5, 2012, this court concluded that Wagner

3

no longer had any ownership interest in WBGI.[8] Because Plaintiff is not a shareholder of WBGI,

he cannot bring a motion for appointment of a receiver under § 78.650(1). *See id.*

For these reasons, Plaintiff's motion for appointment of a receiver for WBGI is denied.

* * * * *

In summary, **IT IS HEREBY ORDERED:**

1.    Plaintiff's renewed motion for an extension of time for service of process or,

alternatively, for service of process upon the Clerk of the Court[9] is **MOOT**.

2.    Plaintiff's motion for appointment of a receiver for WBGI[10] is **DENIED**.

**IT IS SO ORDERED.**

DATED this 5th day of November, 2012.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[8]  *See* docket no. 30 at 18.

[9]  *See* docket no. 35.

[10]  *See* docket no. 59.

4

Exhibit "C"

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WALTER L. WAGNER,<br><br>Plaintiff,<br><br>v.<br><br>PRESTON MICHIE; KENNETH FRANCIK; LESLIE COBOS; MARK ROBINSON; ANNETE EMERSON; STEVE BRYANT; and WORLD BOTANICAL GARDENS, INC., a Nevada corporation,<br><br>Defendants, | REPORT AND RECOMMENDATION<br><br>Case No. 2:11-cv-784-RJS-PMW<br><br><br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Paul M. Warner |

This case has been referred to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C.

§ 636(b)(1)(B).[1] Before the court are (1) World Botanical Gardens, Inc.'s ("WBGI") second

motion to dismiss;[2] (2) Preston Michie, Kenneth Francik, Leslie Cobos, Mark Robinson, Annette

Emerson, and Steve Bryant's (collectively, "Defendants") motion to dismiss;[3] and (3) WBGI's

motion to stay.[4] The court has carefully reviewed the written memoranda submitted by the

---

[1] This case was previously assigned to District Judge Clark Waddoups, *see* docket no. 8, who entered the original order of reference pursuant to 28 U.S.C. § 636(b)(1)(B). *See* docket no. 9. On October 11, 2012, the case was reassigned to District Judge Robert J. Shelby, and the order of reference was affirmed. *See* docket no. 73.

[2] *See* docket no. 39.

[3] *See* docket no. 52.

[4] *See* docket no. 41.

parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written memoranda. *See* DUCivR 7-1(f).

As an initial matter, the court notes that Walter L. Wagner ("Plaintiff") is proceeding pro se in this case. Accordingly, the court will construe his pleadings and other submissions liberally. *See, e.g., Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## FACTUAL BACKGROUND

In a Report and Recommendation issued on March 5, 2012 ("R&R"),[5] this court set out the relevant factual background of this case and recommended rulings on several pending motions.[6] The following additional background, which was not contained in the R&R, is relevant to the motions currently before the court.

### I. State Court Decisions

Plaintiff's complaint in this case contains defamation claims against WBGI and Defendants on three specific topics: record-keeping, misappropriation of WBGI funds, and a

---

[5] *See* docket no. 30.

[6] The factual background set forth in the R&R is incorporated into this report and recommendation by reference and will not be repeated here.

2004 promissory note ("2004 Note").[7] In the R&R, the court took judicial notice of three state court decisions that relate to those causes of action. The three state court decisions are:

1.  *World Botanical Gardens, Inc. v. Walter Wagner, et al.*; Second Judicial District for the State of Nevada, Washoe County; Case No. CV05-02079; dated October 2, 2006 ("Nevada Decision I").

2.  *Walter Wagner v. World Botanical Gardens, Inc.*; Third Circuit Court for the State of Hawaii; Civil No. 04-1-0232; dated November 13, 2007 ("First Hawaii Decision I").

3.  *World Botanical Gardens, Inc. v. Walter Wagner, et al.*; Third Circuit for the State of Hawaii; Case No. 05-1-0210; dated October 9, 2008 ("Second Hawaii Decision I").[8]

WBGI and Defendants now ask the court to take judicial notice of three more state court decisions. The court will take judicial notice of those decisions. The court recognizes that rule 12(d) of the Federal Rules of Civil Procedure generally requires a court to treat a motion to dismiss as a motion for summary judgment when matters outside the complaint are considered. *See* Fed. R. Civ. P. 12(d). However, since the three state court decisions are the type of public records that are subject to judicial notice, the court's consideration of them does not require the court to treat WBGI's and Defendants' motions to dismiss as motions for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Grynberg v. Koch*

---

[7] Plaintiff's complaint also contains a cause of action for fraud, waste, and mismanagement. Because the court recommended dismissal of that claim in the R&R, and because that claim is not implicated by the motions before the court, it will not be addressed further here.

[8] These three decisions were explained in detail in the R&R, and those explanations will not be repeated here.

3

*Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1251 n.4 (10th Cir. 2001); *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000). The three additional state court decisions are:

1. *Walter L. Wagner, et al. v. World Botanical Gardens, Inc.*, Supreme Court of the State of Nevada, Washoe County, Case No. 48428, dated January 15, 2008 (unpublished), *cert. denied*, 555 U.S. 827 (2008) ("Nevada Decision II").

2. *Walter Wagner v. World Botanical Gardens, Inc.*, 268 P.3d 443 (Haw. Ct. App. 2011) ("First Hawaii Decision II").

3. *World Botanical Gardens, Inc. v. Walter Wagner, et al.*, 265 P.3d 493 (Haw. Ct. App. 2011), *cert. denied*, 2011 Haw. LEXIS 265 (Haw. 2011) ("Second Hawaii Decision II").

### A. Nevada Decision II

On January 15, 2008, the Nevada Supreme Court issued the Nevada Decision II, which affirmed the Nevada Decision I. On October 6, 2008, the United States Supreme Court denied Plaintiff's petition for a writ of certiorari.

### B. First Hawaii Decision II

On December 23, 2011, the Intermediate Court of Appeals of Hawaii issued the First Hawaii Decision II. The First Hawaii Decision II reversed the First Hawaii Decision I on Plaintiff's claim for quantum meruit, but affirmed the First Hawaii Decision I in all other respects. The case was remanded and is now pending before the trial court.

### C. Second Hawaii Decision II

Plaintiff appealed the Second Hawaii Decision I to the Intermediate Court of Appeals of Hawaii, and the court affirmed the Second Hawaii Decision I with the Second Hawaii Decision

4

II. Plaintiff then filed a petition for a writ of certiorari with the Hawaii Supreme Court, and that petition was rejected.

## II. R&R

In addition to the above, and the factual background set forth in the R&R, a summary of the analysis contained in the R&R is necessary for resolution of the motions before the court. In the R&R, this court recommended that WBGI's motion to dismiss be granted in part and denied in part and that Plaintiff's motion for a preliminary injunction be denied. With respect to WBGI's first motion to dismiss, this court concluded that the motion should be denied without prejudice as to Plaintiff's claims related to record-keeping, misappropriation of funds, and the 2004 Note. This court also concluded that the motion should be granted as to Plaintiff's claim for fraud, waste, and mismanagement.

In reaching the conclusion about Plaintiff's claims related to record-keeping, misappropriation of funds, and the 2004 Note, this court addressed whether those claims were barred under the doctrine of issue preclusion by the Nevada Decision I (record-keeping), the First Hawaii Decision I (2004 Note), and the Second Hawaii Decision I (misappropriation of funds).[9] On each of those claims, this court concluded that WBGI had established three of the elements of issue preclusion, but had not satisfied the requirement that the Nevada Decision I, the First Hawaii Decision I, and the Second Hawaii Decision I resulted in final judgments or decisions. Accordingly, this court could not conclude that Plaintiff's claims related to record-keeping,

---

[9] The applicability of the doctrine of issue preclusion to this case was discussed in detail in the R&R and will not be repeated here.

5

misappropriation of funds, and the 2004 Note were barred by the doctrine of issue preclusion. At the same time, the court indicated that if and when WBGI could demonstrate that the Nevada Decision I, the First Hawaii Decision I, and the Second Hawaii Decision I ended in final judgments or decisions, it could renew its motion to dismiss.

## PROCEDURAL BACKGROUND

Plaintiff filed his original complaint on August 29, 2011,[10] and an amended complaint on October 4, 2011.[11] Subsequent to the filing of his amended complaint, Plaintiff filed a motion for a preliminary injunction.[12] Initially, Plaintiff served his complaint only on WBGI.[13] In response to the complaint, WBGI filed a motion to dismiss.[14] In January 2012, after the 120-day period for proper service of the complaint had expired, see Fed. R. Civ. P. 4(m), Plaintiff filed a motion for an extension of time to serve Defendants or, alternatively, to allow him to effect service upon the Clerk of the Court.[15]

On March 5, 2012, this court issued the R&R.[16] In an order issued on that same day, this court denied without prejudice Plaintiff's motion for an extension of time to serve Defendants or,

---

[10] See docket no. 1.

[11] See docket no. 2.

[12] See docket no. 10.

[13] See docket no. 4.

[14] See docket no. 5.

[15] See docket no. 28.

[16] See docket no. 30.

6

alternatively, to effect service upon the Clerk of the Court.[17]  In that order, the court concluded

that Plaintiff had failed to demonstrate "good cause" for his failure to serve Defendants in a

timely fashion. *Id.*  The court also concluded that Plaintiff's argument for service upon the Clerk

of the Court was unpersuasive.  At the same time, the court recognized that, pursuant to rule 4(m)

of the Federal Rules of Civil Procedure, notice to Plaintiff was required before the court could

recommend dismissal of his claims against Defendants under rule 4(m).  Consequently, the court

provided Plaintiff with the opportunity to renew his motion on or before March 30, 2012, with

the requirement that he provide enough detail in his motion for the court to determine whether

"good cause" exists for extending the time to serve Defendants. *Id.*  Plaintiff was warned that his

failure to renew his motion would result in a recommendation that his claims against Defendants

be dismissed pursuant to rule 4(m).

On March 19, 2012, Plaintiff filed objections to the R&R.[18]  On April 4, 2012, WBGI

filed a response to Plaintiff's objections.[19]  The R&R, Plaintiff's objections, and WBGI's

response have not yet been resolved as a consequence of the subsequent filings referenced below.

On April 4, 2012, WBGI filed its second motion to dismiss.[20]  The following day, WBGI

filed a motion to stay.[21]  On May 16, 2012, counsel entered an appearance for Defendants by

---

[17] *See* docket no. 31.

[18] *See* docket no. 32.

[19] *See* docket no. 38.

[20] *See* docket no. 39.

[21] *See* docket no. 41.

filing a motion to dismiss.[22]  All three of those motions will be addressed in this Report and Recommendation.

There are two other motions pending in this case that will not be addressed in this Report and Recommendation.  Plaintiff has filed a renewed motion for an extension of time to serve Defendants or, alternatively, to effect service upon the Clerk of the Court.[23]  Plaintiff has also filed a motion for appointment of a receiver for WBGI.[24]  The court will not address those motions here.  Instead, they will be addressed by way of a separate order.

## ANALYSIS

The motions before the court are (1) WBGI's second motion to dismiss and Defendants' motion to dismiss and (2) WBGI's motion to stay.

### I. Motions to Dismiss

The motions to dismiss before the court seek dismissal of Plaintiff's complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss under rule 12(b)(6), the court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is

---

[22] *See* docket no. 52.

[23] *See* docket no. 35.

[24] *See* docket no. 59.

8

> plausible on its face." A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).

As indicated above, this court has already concluded in the R&R that WBGI has

established three of the four required elements for the application of issue preclusion with respect

to Plaintiff's claims related to record-keeping, misappropriation of funds, and the 2004 Note. In

their motion to dismiss, Defendants argue that the court's conclusions in the R&R concerning

issue preclusion should apply equally to them because Plaintiff makes the same claims in his

complaint against WBGI and Defendants related to record-keeping, misappropriation of funds,

and the 2004 Note. The court agrees. For the same reasons set forth in the R&R, the court

concludes that Defendants, like WBGI, have established three of the four required elements of

issue preclusion for Plaintiff's claims related to record-keeping, misappropriation of funds, and

the 2004 Note.

The court now turns to the unsatisfied element of issue preclusion for those claims,

namely, whether the Nevada Decision I, the First Hawaii Decision I, and the Second Hawaii

Decision I have resulted in final judgments or decisions.

### A. Nevada Decision I

In the R&R, this court addressed whether Plaintiff's claims related to record-keeping

were barred by the doctrine of issue preclusion by the Nevada Decision I. As noted above, the

court concluded that the only unsatisfied element was the finality of the Nevada Decision I.

WBGI and Defendants now assert that the case underlying the Nevada Decision I has ended in a

final judgment on the merits. The court agrees. The Nevada Decision II affirmed the Nevada

Decision I and the United States Supreme Court denied Plaintiff's petition for a writ of certiorari.

Because WBGI and Defendants have now established all four of the required elements for

application of issue preclusion, the court concludes that Plaintiff's claims related to

record-keeping are barred by that doctrine and that those claims should be dismissed.

### B. First Hawaii Decision I

Also in the R&R, this court addressed whether Plaintiff's claims related to the 2004 Note

were barred by the doctrine of issue preclusion by the First Hawaii Decision I. As noted above,

the court concluded that the only unsatisfied element of issue preclusion was the finality of that

decision. WBGI and Defendants admit that this element is still not satisfied because the First

Hawaii Decision I was reversed by the First Hawaii Decision II, and the case has been remanded

to the trial court for further proceedings. In light of that admission, the court cannot conclude

that the First Hawaii Decision I has resulted in a final judgment on the merits.[25]

### C. Second Hawaii Decision I

The court also addressed in the R&R whether Plaintiff's claims related to

misappropriation of funds were barred by the doctrine of issue preclusion by the Second Hawaii

Decision I. WBGI and Defenants contend that the case underlying the Second Hawaii Decision I

---

[25]  WBGI has filed a motion to stay this case pending resolution of the case underlying the
First Hawaii Decision I. That motion will be addressed below.

has ended in a final judgment on the merits. The court agrees. As noted above, Plaintiff

appealed the Second Hawaii Decision I to the Intermediate Court of Appeals of Hawaii, and the

court affirmed the Second Hawaii Decision I in the Second Hawaii Decision II. Plaintiff then

filed a petition for a writ of certiorari with the Hawaii Supreme Court, and that petition was

rejected. There is no indication that Plaintiff has sought further appeal of the Second Hawaii

Decision I. Because WBGI and Defendants have now established all four of the required

elements for application of issue preclusion, the court concludes that Plaintiff's claims related to

misappropriation of funds are barred by that doctrine and that those claims should be dismissed.

### D. Conclusion on Motions to Dismiss

Based on the foregoing, the court concludes that WBGI's second motion to dismiss and

Defendants' motion to dismiss should be granted in part and denied in part. More specifically,

WBGI's second motion to dismiss and Defendants' motion to dismiss Plaintiff's claims related

to record-keeping and misappropriation of funds should be granted. WBGI's second motion to

dismiss and Defendants' motion to dismiss Plaintiff's claims related to the 2004 Note should be

denied without prejudice. When the First Hawaii Decision I becomes final, WBGI and

Defendants should be allowed, if necessary, to renew their motions to dismiss Wagner's claims

related to the 2004 Note.

### II. Motion to Stay

As the court has noted, WBGI and Defendants have established three of the four required

elements for issue preclusion with respect to the case underlying the First Hawaii Decision I. In

this motion, WBGI seeks a stay of this case pending finality of the case underlying the First

11

Hawaii Decision I. WBGI argues that a final decision in that case could result in the

establishment of all four of the required elements of issue preclusion in this case and, therefore,

that the case should be stayed pending that final decision.

The United States Supreme Court has recognized that "the power to stay proceedings is

incidental to the power inherent in every court to control the disposition of the causes on its

docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North*

*American Co.*, 299 U.S. 248, 254 (1936). Further, "[t]he decision whether to defer to the state

courts is necessarily left to the discretion of the district court." *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

When considering a motion to stay, the court must apply the *Colorado River* doctrine.

*See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). "The *Colorado*

*River* doctrine applies to 'situations involving the contemporaneous exercise of concurrent

jurisdictions . . . by state and federal courts.'" *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir.

1994) (quoting *Colo. River*, 424 U.S. at 817) (alteration in original). "The doctrine permits a

federal court to dismiss or stay a federal action in deference to pending parallel state court

proceedings, based on 'considerations of wise judicial administration, giving regard to

conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting

*Colo. River*, 424 U.S. at 817) (other quotations and citation omitted). "[D]eclining to exercise

jurisdiction based on the *Colorado River* doctrine is appropriate only in 'exceptional'

circumstances." *Id.* at 1081 (quoting *Colo. River*, 424 U.S. at 818; *Moses H. Cone*, 460 U.S. at

19).

12

> The Supreme Court has set forth a number of factors for a
> court to consider in determining whether exceptional
> circumstances exist. Before examining these factors, however, a
> federal court must first determine whether the state and federal
> proceedings are parallel. Suits are parallel if substantially the same
> parties litigate substantially the same issues in different forums.

*Id.* (quotations and citations omitted). To determine whether the state and federal proceedings

are parallel, this court "examine[s] the state proceedings as they actually exist to determine

whether they are parallel to the federal proceedings." *Id.*

"[I]f a federal court determines the state and federal proceedings are parallel, it must then

determine whether deference to state court proceedings is appropriate under the particular

circumstances." *Id.* at 1082.

> In *Colorado River*, the Supreme Court set forth a nonexclusive list
> of factors for courts to consider in deciding whether exceptional
> circumstances exist to warrant deference to parallel state
> proceedings: (1) whether either court has assumed jurisdiction
> over property; (2) the inconvenience of the federal forum; (3) the
> desirability of avoiding piecemeal litigation; and (4) the order in
> which the courts obtained jurisdiction. The Court discussed
> several other factors in *Moses H. Cone,* such as the vexatious or
> reactive nature of either the federal or the state action, whether
> federal law provides the rule of decision, and the adequacy of the
> state court action to protect the federal plaintiff's rights. Other
> courts also have considered whether the party opposing abstention
> has engaged in impermissible forum-shopping.
>
> No single factor is dispositive; the weight to be given to
> any one factor may vary greatly from case to case, depending on
> the particular setting of the case. Rather than use the factors as a
> mechanical checklist, a court should engage in a careful balancing
> of the important factors as they apply in a given case, with the
> balance heavily weighted in favor of the exercise of jurisdiction.

13

*Id.* (quotations and citations omitted). The court now turns to examining those factors as they apply to this case.

### A. Parallel Proceedings

Before addressing the factors to determine if exceptional circumstances exist warranting a stay of this case, the court must determine whether the state and federal proceedings are parallel. As noted above, "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (quotations and citations omitted). Further, when analyzing whether state and federal proceedings are parallel, this court "examine[s] the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings," *Id.*

In the R&R, this court determined that this case and the case underlying the First Hawaii Decision I present the same issues with respect to the 2004 Note. Specifically, this court concluded that "the issues presented in this case concerning . . . 2004 Note are identical to the issues addressed in the First Hawaii Decision [I]."[26] In addition, the case underlying the First Hawaii Decision I involves substantially the same parties as this case. Accordingly, the court concludes here that this case and the case underlying the First Hawaii Decision I are parallel proceedings. Accordingly, the court turns to addressing the relevant factors to determine whether exceptional circumstances exist to warrant a stay of this case in deference to the case underlying the First Hawaii Decision I.

---

[26] Docket no. 30 at 14.

14

### B. Assumption of Jurisdiction Over Property

Neither this court nor the court that issued the First Hawaii Decision I have assumed jurisdiction over any property. Consequently, this factor is inapplicable here.

### C. Inconvenience of the Federal Forum

While Wagner is a resident of Utah, none of the named defendants are Utah residents. WBGI is a Nevada corporation, with its principal place of business in Hawaii. Defendants reside in a variety of states, including California, Minnesota, and Oregon. Accordingly, the court concludes that the District of Utah is an inconvenient forum for the named defendants. As such, this factor weighs in favor of a stay.

### D. Avoiding Piecemeal Litigation

In the R&R, this court has already concluded that the issues raised in this case with respect to the 2004 Note are identical to the issues raised on the same topic in the case underlying the First Hawaii Decision I. Consequently, allowing this case to go forward at the same time as the case underlying the First Hawaii Decision I would result in piecemeal litigation and a potential waste of judicial resources. Accordingly, this factor weighs in favor of a stay.

### E. Order of Jurisdiction

This factor also weighs in favor of a stay. The case underlying the First Hawaii Decision I was initiated in July 2004, while this case was initiated much later, in August 2011.

### F. Vexatious or Reactive Nature

Again, this court has already concluded in the R&R that the issues concerning the 2004 Note that are raised in this case are identical to the issues raised in the case underlying the First

15

Hawaii Decision. After Plaintiff received an unfavorable ruling on those issues in the First Hawaii Decision I, he initiated this case, raising the same issues. Consequently, it appears that Plaintiff's filing of this case was, at best, reactive and, at worst, vexatious. Therefore, this factor weighs in favor of a stay.

### G. Federal Law

Federal law does not provide the rule of decision in this case. Instead, Plaintiff's claims in this case and the case underlying the First Hawaii Decision I all appear to be state-law claims. Accordingly, this factor weighs in favor of a stay.

### H. Protection of Plaintiff's Rights

There is no indication that Plaintiff's rights will not be adequately protected in the case underlying the First Hawaii Decision I. Indeed, Plaintiff chose that forum to protect his rights initially when he filed that case in July 2004, well before he initiated this case. Accordingly, this factor weighs in favor of a stay.

### I. Forum-Shopping

Although Plaintiff has filed two cases that raise identical issues concerning the 2004 Note, the court cannot say that he has engaged in forum shopping. Instead, it appears that Plaintiff has simply chosen to litigate parallel cases in two different forums. The court is not persuaded that such conduct amounts to forum shopping. Consequently, this factor weighs against imposing a stay.

16

### J. Conclusion on Motion to Stay

The overwhelming majority of the above-referenced factors weigh in favor of a stay of this case pending final resolution of the case underlying the First Hawaii Decision I. After carefully balancing those factors, the court concludes that exceptional circumstances exist warranting a stay of this case in deference to the case underlying the First Hawaii Decision I. Accordingly, the court concludes that WBGI's motion to stay should be granted. The stay should remain in effect until the case underlying the First Hawaii Decision I results in a final judgment. Within thirty (30) days after that final judgment is rendered, the parties should be directed to provide the court with written notice of the judgment, at which point the stay in this case should be lifted.

### CONCLUSION AND RECOMMENDATION

In summary, **IT IS HEREBY RECOMMENDED** that:

1.   WBGI's second motion to dismiss[27] and Defendants' motion to dismiss[28] be **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.   WBGI's second motion to dismiss and Defendants' motion to dismiss Plaintiff's claims related to record-keeping and misappropriation of funds be **GRANTED**, as indicated above.

---

[27] *See* docket no. 39.

[28] *See* docket no. 52.

17

     b.    WBGI's second motion to dismiss and Defendants' motion to dismiss Plaintiff's claims related to the 2004 Note be **DENIED WITHOUT PREJUDICE**, as indicated above.

2.    WBGI's motion to stay[29] be **GRANTED**, as indicated above.

\* \* \* \* \*

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days after receiving it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 5th day of November, 2012.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[29] *See* docket no. 41.

18

Exhibit "D"

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WALTER L. WAGNER,<br><br>    Plaintiff,<br><br>    vs.<br><br>PRESTON MICHIE, KENNETH FRANCIK,<br>LESLIE COBOS, MARK ROBINSON,<br>ANNETTE EMERSON, STEVE BRYANT,<br>and WORLD BOTANICAL GARDENS,<br>INC.,<br><br>    Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:11-cv-784 |

There are a number of motions pending in the above-captioned matter. Over a year ago,

Defendant World Botanical Gardens, Inc. (WBGI) filed a Motion to Dismiss (Dkt. No. 5) and

Plaintiff Walter L. Wagner filed a Motion for a Preliminary Injunction (Dkt. No. 10). The

Honorable Paul Warner addressed these motions in his First Report and Recommendations (Dkt.

No. 30). Judge Warner recommended that the court deny Mr. Wagner's Motion for a

Preliminary Injunction. He then considered WBGI's motion to dismiss the claims pending

against it.

Judge Warner divided Mr. Wagner's claims into two categories. First, he recommended

that the court grant WBGI's motion as it pertained to Mr. Wagner's claims for fraud, waste, and

mismanagement because he found that Mr. Wagner lacked standing to bring these claims.

Second, Judge Warner assessed whether Mr. Wagner's claims for defamation should be

dismissed under the doctrine of issue preclusion, since Mr. Wagner has been involved in

numerous state court actions with these parties on similar matters. Mr. Wagner alleges claims

for slander and libel against WBGI for making false statements about three different topics: Mr.

Wagner's poor record-keeping, a fraudulent promissory note signed by Mr. Wagner's wife Linda

in 2004, and Mr. Wagner's misappropriation of WBGI funds. Judge Warner took judicial notice

of three state court decisions that dealt with these issues:

1. *World Botanical Gardens, Inc. v. Wagner*, Case No. CV05-02079 (Second
   Judicial District for the State of Nevada, Oct. 2, 2006) ("Nevada");

2. *Wagner v. World Botanical Gardens, Inc.*, Case No. 04-1-0232 (Third
   Circuit Court for the State of Hawaii, Nov. 13, 2007) ("First Hawaii"); and

3. *World Botanical Gardens, Inc. v. Wagner*, Case No. 05-1-0210 (Third
   Circuit Court for the State of Hawaii, Oct. 9, 2008) ("Second Hawaii").

Given the findings made by these courts, Judge Warner found that the Nevada decision

barred Mr. Wagner's claim related to record-keeping; that the First Hawaii decision barred Mr.

Wagner's claim concerning the 2004 promissory note; and that the Second Hawaii decision

barred Mr. Wagner's claim about misappropriation. But because Judge Warner did not have

proof that any of these decisions were final, he found that WBGI had not satisfied a required

element to establish issue preclusion. Accordingly, Judge Warner recommended that the court

deny WBGI's Motion to Dismiss as it pertained to the defamation claims without prejudice to

refile if the state court decisions became final.

After Judge Warner issued his First Report and Recommendations, WBGI submitted a

second Motion to Dismiss (Dkt. No. 39) and a Motion to Stay (Dkt. No. 41). The individual

Defendants also submitted a Motion to Dismiss (Dkt. No. 52). In these motions, the Defendants

presented evidence that the Nevada decision was affirmed by the Nevada Supreme Court; that the

Intermediate Court of Appeals of Hawaii reversed the First Hawaii decision on a quantum meruit

claim but affirmed the decision in all other respects; and that the Hawaii Supreme Court denied a

petition for a writ of certiorari for the Second Hawaii decision, which was affirmed by the

Intermediate Court of Appeals of Hawaii. As a result, the parties argued that the defamation

claims related to poor record-keeping and misappropriation of funds should be dismissed, and

that the court should stay the remaining defamation claim concerning the 2004 promissory note

until the First Hawaii court issued a final decision. In his Second Report and Recommendations

(Dkt. No. 75), Judge Warner agreed that the Defendants' arguments were valid and adopted their

recommendations.

Mr. Wagner has filed an Objection to Judge Warner's First Report and Recommendations

(Dkt. No. 32) as well as an Objection to the Second Report and Recommendations (Dkt. No. 77).

In his first set of objections, Mr. Wagner argues that only issues concerning the identity of

WBGI's proper governing board were litigated in the Nevada court, and that therefore the court's

decision cannot be used to preclude him from now litigating issues about his record-keeping.

The court disagrees. The Nevada court ultimately decided which of two competing boards of

directors should control WBGI. But to reach this decision, the Nevada court resolved a number

of related factual and legal issues, including whether Mr. Wagner misappropriated funds,

whether he kept proper records, and whether his removal from the board of directors was proper.

Mr. Wagner had ample opportunity to argue these issues during the Nevada litigation and is now

barred from asking this court to reconsider factual matters that the Nevada court has already

addressed.

Second, Mr. Wagner contends that he did not have a full and fair opportunity to litigate the issues addressed by the Second Hawaii court because his wife was arrested during those proceedings on a bench warrant. Mr. Wagner asserts that he could not present his own testimony during that trial because he had to bail his wife out. The court finds that Mr. Wagner's argument is nonsensical. There is no evidence that Mr. Wagner himself was arrested or was prevented from appearing at the Second Hawaii trial. He cannot complain that he did not have a full and fair opportunity to litigate when he voluntarily chose not to appear. In any event, the Second Hawaii court had already decided issues concerning Mr. Wagner's conversion and misappropriation on a motion for partial summary judgment, long before Ms. Wagner was arrested at trial.

Third, Mr. Wagner challenges Judge Warner's finding that Mr. Wagner lacked standing to bring his fraud, waste, and mismanagement claims against WBGI. Mr. Wagner claims that the sale in which his remaining interest in WBGI was sold was conducted fraudulently. But, as the Second Hawaii court found, this sale was conducted according to a valid Nevada court order and under court direction. In essence, Mr. Wagner is asking a federal court to question the sufficiency of a state court proceeding for reasons wholly unrelated to any federal law. The court declines Mr. Wagner's invitation.

In his second set of objections, Mr. Wagner argues that Judge Warner failed to consider a number of affidavits that Mr. Wagner submitted in support of his contention that the Nevada and Hawaii state court decisions were fraudulently obtained. But Judge Warner was considering purely legal issues on a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. These legal decisions do not depend on any of the factual issues raised by Mr.

4

Wagner in his supporting affidavits. As a result, it was appropriate for Judge Warner to
disregard them. In any event, even if the state court proceedings were indeed tainted by the
fraudulent actions of some of the parties (a fact of which the court is highly skeptical), Mr.
Wagner must challenge those decisions using procedures outlined by state law. This court will
not overturn a state court decision on the grounds that Mr. Wagner suggests, no matter how many
affidavits he submits.

Second, Mr. Wagner contends that the Hawaii appellate court's decision on the First
Hawaii matter resolves his claims in his favor. The court generously concludes that Mr.
Wagner's argument is born out of a misapprehension of the Hawaii court's ruling. The Hawaii
Court of Appeals held: "We conclude that summary judgment was not warranted as to Wagner's
claim based on quantum meruit, and further proceedings on remand are required as to this claim.
In all other respects, we affirm the circuit court." *Wagner v. World Botanical Gardens, Inc.*, 268
P.3d 443, 446 (Haw. Ct. App. 2011). These "other respects" include a claim based on the 2004
promissory note, which the First Hawaii court denied. It is clear that the Court of Appeals took
no issue with the First Hawaii court's finding that the 2004 promissory note was fraudulent. In
any event, the appellate court did not resolve Mr. Wagner's claims in his favor, since even Mr.
Wagner's quantum meruit claim faces a number of hurdles on remand. These hurdles include
issues about whether he was required to be licensed to recover and whether his claim is barred by
the "multitude of evidence suggesting questionable conduct by Wagner." *Id.* at 456.

Finally, Mr. Wagner argues that he should be able to proceed with the part of his
defamation action that concerns an indictment against him that the Defendants allegedly
published on the WBGI website. But Mr. Wagner's claim appears to be nothing more than an

5

assertion that the Defendants published a document available in the public record. *See State of Hawaii v. Wagner*, Case No. 3-PC-08-1-97 (indictment filed February 28, 2008). This action does not constitute a claim for defamation.

Because the court is not persuaded by any of Mr. Wagner's objections, the court adopts all of Judge Warner's recommendations except for one. The court sees no reason to stay the case until resolution of the First Hawaii decision because the court finds ample reasons to dismiss the case immediately.

While Judge Warner focused on the First Hawaii court's treatment of the 2004 promissory note, other courts have also addressed this issue. Most importantly, the Second Hawaii court made an identical finding in its Findings of Fact: "After August of 2003, Defendant Linda Wagner executed numerous documents purporting to be WBGI documents using the title of WBGI Treasurer, without authority or authorization to do so, including a Promissory Note dated January 1, 2004." *Second Hawaii Decision* ¶ 73. Based on this statement, the court holds that the Second Hawaii court has already addressed an identical issue to the matter that Mr. Wagner now attempts to bring before this court. And as discussed above, Mr. Wagner had a full and fair opportunity to litigate the matters that were considered by the Second Hawaii court. Since the Second Hawaii decision is now final for the purposes of issue preclusion, Mr. Wagner is barred from asserting any claims based on the 2004 promissory note. The court therefore dismisses all of Mr. Wagner's claims on the grounds that they have been previously litigated.

The court notes that a myriad of other reasons exist to dismiss this case. If the court determined that issue preclusion did not bar Mr. Wagner's causes of action, the court would nevertheless issue an Order to Show Cause why the case should not be dismissed for failure to

6

comply with Rule 11(b) of the Federal Rules of Civil Procedure. The court is convinced that this

case has been filed for the purpose of harassing the Defendants. The Second Hawaii court

labeled Mr. Wagner a vexatious litigant for commencing at least five civil actions that were

determined adversely to him, as well as for filing in bad faith numerous frivolous motions that

were intended for the sole purpose of causing unnecessary delay. The number of instances of Mr.

Wagner's fraudulent conduct, false representations, and unauthorized actions listed by both the

Second Hawaii court and the Nevada court are too legion to list here. As one example, Mr.

Wagner was able to obtain a default judgment against WBGI without its knowledge by telling the

Second Hawaii court that WBGI did not have any officers or directors and that WBGI did not

object to the default being taken.[1]  *Second Hawaii Decision* ¶ 96. Given this background, it is

highly unlikely that Mr. Wagner's current suit was brought in good faith. It is also doubtful that

Mr. Wagner's Complaint satisfies the pleading standards required by Rule 8 of the Federal Rules

of Civil Procedure. It is even doubtful that the court has jurisdiction to hear this matter, as Mr.

Wagner presents no federal question and bases his claim to diversity jurisdiction on unsupported

assertions that the amount in controversy is over $75,000. All of these observations support the

court's decision to dismiss the case.

## CONCLUSION

For the reasons stated above, Mr. Wagner's objections are OVERRULED and the court

adopts Judge Warner's First Report and Recommendations (Dkt. No. 30) in full. The court

adopts Judge Warner's Second Report and Recommendations (Dkt. No. 75) with the exception

---

[1]The Second Hawaii court later granted relief from its entry of default when it realized
that WBGI did indeed have a board of directors who had never received notice of the lawsuit.

7

that it declines to stay the case. Instead, the court dismisses all of Mr. Wagner's claims. As a

result, the Defendants' Motions to Dismiss (Dkt. Nos. 39 & 52) are GRANTED. WBGI's first

Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction (Dkt. No. 5) and its

Motion to Stay (Dkt. No. 41) are DENIED AS MOOT. Mr. Wagner's Motion for a Preliminary

Injunction (Dkt. No. 10) is DENIED. The court orders the Clerk of the Court to close the case.

SO ORDERED this 22nd day of April, 2013.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge