Arnold Richer, #2751
Patrick F. Holden, #6247
**RICHER & OVERHOLT, P.C.**
901 West Baxter Drive
South Jordan, Utah 84095
Telephone: (801) 561-4750, Ext. #17
Facsimile: (801) 561-4744
aricher@richerandoverholt.com
pholden@richerandoverholt.com

Attorneys for Plaintiff World Botanical Gardens, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 12-35494 |
| WALTER L. WAGNER, | Chapter 7 |
| Debtor. | Honorable Joel T. Marker |
| WORLD BOTANICAL GARDENS, INC., <br><br> Plaintiff, <br><br> v. <br><br> WALTER L. WAGNER. <br><br> Defendant. | Adversary Proceeding No. 13-02099 <br><br> **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> (Filed via ECF) |

Plaintiff World Botanical Gardens, Inc. ("WBGI"), by and through its attorneys of record and

pursuant to Local Rule 7056-1 and Fed.R.Civ.P. 56, submits Plaintiff's Memorandum in Support

of Motion for Summary Judgment against Defendant Walter L. Wagner ("Wagner").

WBGI 06

## INTRODUCTION

WBGI seeks a determination that certain debts arising out of state court orders and judgments ("Judgments") are nondischargeable under 11 U.S.C. § 523(a)(2), (4), (6) and (19). In seeking this determination, WBGI relies on the preclusive effect of the Judgments issued in two separate cases in Nevada and Hawaii. Because WBGI's Statement of Undisputed Material Facts is based on these Judgments, WBGI begins with its request that this Court take judicial notice of the Judgments. As part of WBGI's request for judicial notice, WBGI provides a brief description of the two cases followed by the identification of the specific Judgments upon which WBGI relies.

## A.   REQUEST FOR JUDICIAL NOTICE OF THE JUDGMENTS

WBGI obtained the Judgments against Wagner in two state court proceedings in Nevada and Hawaii. WBGI requests, pursuant to Fed. R. Evid. 201, that the Court take judicial notice of the Judgments.[1] Fed. R. Evid. 201(a) provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably questioned." Fed. R. Evid. 201(c)(2) states that the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information."

The Tenth Circuit Court of Appeals has taken judicial notice of state court proceedings. For

---

[1] The United States District Court for the District of Utah in <u>Wagner v. Michie et al.</u>; Case No. 2:11-cv-784; took judicial notice of these decisions in the following documents: (1) Report and Recommendation dated March 5, 2012 (Magistrate Judge Paul M. Warner), pgs. 2 - 3; (2) Report and Recommendation dated November 5, 2012 (Magistrate Judge Paul M. Warner), pgs. 2 - 4; and (3) Memorandum Decision and Order dated April 22, 2013 (Judge Robert J. Shelby), pgs. 7 -8 (generally affirming Magistrate Warner's Report and Recommendations). The Nevada Contempt Judgment was not at issue and was not judicially noticed.

                     WBGI 06

example, in <u>St. Louis Baptist Temple v. Federal Deposit Ins. Corp.</u>, 605 F.2d 1169, 1172 (10th Cir.

1979) the Court stated that "[i]t has been held that federal courts . . . may take notice of proceedings

in other courts, both within and without the federal judicial system, if those proceedings have a direct

relation to matters at issue." <u>See also</u> <u>Pace v. Swerdlow</u>, 519 F.3d 1067, 1072 (10th Cir.

2008)(affirming district court action in taking "judicial notice of all the materials in the state court's

file.") and <u>Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 732 F.Supp. 2d 1107, 116 n. 12 (D.

Hawaii 2010)("Judicial notice is properly taken of transcripts, orders and decisions made by other

courts or administrative agencies.")

     The Judgments are directly related to the resolution of this case. The Judgments are the basis

for WBGI's argument that Wagner's debts arising from the Judgments are nondischargeable, and

moreover, that the doctrine of issue preclusion bars relitigation of the factual and legal issues related

to the determination of nondichargeability.

**1. The Nevada Judgments**

**(A) Identification of Specific Judgments**

     WBGI seeks judicial notice of the following three judicial determinations from the Nevada

state court:

(1)    Findings of Fact, Conclusions of Law, Order of Permanent Injunction, and
Judgment; <u>World Botanical Gardens, Inc. v. Walter Wagner, et al.</u>; Second
Judicial District for the State of Nevada, Washoe County; Case No. CV05-
02079, dated October 2, 2006. A copy of the Findings of Fact, Conclusions
of Law, Order of Permanent Injunction, and Judgment is attached as Exhibit
A (hereinafter the "Nevada Judgment" and the court as the "Nevada Court");

(2)    Findings of Fact, Conclusions of Law, Order of Contempt, and Judgment of
Contempt; <u>World Botanical Gardens, Inc. v. Walter Wagner, et al.</u>; Second

i

Judicial District for the State of Nevada, Washoe County; Case No. CV05-02079, dated February 7, 2007. A copy of the Findings of Fact, Conclusions of Law, Order of Contempt, and Judgment of Contempt is attached as Exhibit B (hereinafter the "Nevada Contempt Judgment");

(3)     Order of Affirmance; World Botanical Gardens, Inc. v. Walter Wagner, et al.; The Supreme Court of the State of Nevada; No. 48428, dated January 15, 2008. The United States Supreme Court denied Wagner's Petition for a Writ of Certiorari. A copy of the Order of Affirmance and the denial of Wagner's Petition for Writ of Certiorari is attached as Exhibit C (hereinafter the "Affirmance Order")

**(B) General Description of Nevada Judgments**

WBGI sued Wagner in the Nevada Court to obtain an injunction against Wagner's ongoing interference with WBGI's operations. After a three day trial, the Nevada Court described a "relentless conspiracy and campaign by Defendant Walter Wagner and other Remaining Defendants to gain control of WBGI at any cost." [Exhibit A, pg. 4, ¶ 13]  The Nevada Court found that Wagner:

> had diverted funds to his personal accounts, failed to keep proper financial records, and failed to pay employment taxes, failed to file corporate income tax reports, failed to keep accurate records of shareholders.

[Exhibit A, pgs. 2 - 3; ¶ 6]

The Nevada Court ruled that Wagner (1) "intentionally and illegally engaged in a fraudulent scheme to sell shares of WBGI stock to unsuspecting purchasers" [Exhibit A, pg. 7, ¶ 27]; (2) that "[t]he removal of Defendant Walter Wagner from the WBGI Board of Directors was proper . . . ." [Exhibit A, pg. 9, ¶ 2]; and (3) that "[f]rom Defendant Walter Wagner's removal through the present, the WBGI Board of Directors has properly managed the business and affairs of WBGI." [Exhibit A, pg. 6, ¶ 22]

WBGI 06

As a result, the Nevada Court permanently enjoined Wagner from creating or participating in an alternate board of directors, interfering with WBGI's business affairs, altering signature cards of WBGI bank accounts, or attempting to sell WBGI property. [Exhibit A, pgs. 10-11] The Nevada Court entered judgment against Wagner "in the amount of $12,737.06 . . . for damages . . . cause[d] [sic] WBGI by freezing the WBGI bank account and closing the WBGI website." [Exhibit A, pg. 12] In the subsequent Nevada Contempt Judgment, the Nevada Court entered judgment in favor of WBGI against Wagner "in the amount of $281,216.00 together with pre-judgment interest at the legal rate from the date of each fraudulent share sale and post-judgment interest at the legal rate." [Exhibit B, pg. 6]

The basis of the Nevada Contempt Judgment was as follows:

Defendant Walter Wagner . . . knowingly and intentionally defrauded 60 innocent and unsuspecting investors who thought they were purchasing WBGI stock from WBGI through authorized agents of WBGI in a total mount of $351,520.00, funds which these unsuspecting investors intended WBGI to receive and use to meet WBGI's capital needs. Instead, Defendant Walter Wagner . . . illegally and intentionally misappropriated these funds for their personal purposes such that WBGI did not received [sic] any of these funds.

[Exhibit B, pgs. 2 - 3]

The Nevada Court further concluded that "[t]he total amount of $351,520.00 for the sale of WBGI stock belongs to WBGI, the corporation . . . ." [Exhibit B, pg. 3]

## 2. The Hawaii Judgments

## (A) Identification of Specific Hawaii Judgments

(i)     Findings of Fact, Conclusions of Law, and Decision and Order; <u>World Botanical Gardens, Inc. v. Walter Wagner, et al.</u>; Third Circuit for the State of Hawaii; Case No. 05-01-0210, dated October 9, 2008. A copy of the

iii

WBGI 06

Findings of Fact, Conclusions of Law, and Decision and Order is attached as Exhibit D (hereinafter the "Hawaii Decision" and the court as the "Hawaii Court");

(ii)    First Amended Final Judgment; World Botanical Gardens, Inc. v. Walter Wagner, et al.; Third Circuit for the State of Hawaii; Case No. 05-01-0210, dated September 28, 2009. A copy of the First Amended Final Judgment is attached as Exhibit E (hereinafter the "Hawaii Judgment");

(iii)   Summary Disposition Order; World Botanical Gardens, Inc. v. Walter Wagner, et al.; Intermediate Court of Appeals of Hawai'i; Case No. 05-01-0210 and App. No. 30133, dated September 20, 2011. A copy of the Summary Disposition Order is attached as Exhibit F (hereinafter the "Summary Disposition Order"); and

(iv)    Order Rejecting Application for Writ of Certiorari; World Botanical Gardens, Inc. v. Walter Wagner, et al.; Supreme Court of Hawai'i; Case No. 05-01-0210 and App. No. 30133, dated December 6, 2011. A copy of the Order Rejecting Application for Writ of Certiorari is attached as Exhibit G (hereinafter the "Order Rejecting Certiorari").

**(B) General Description of Hawaii Judgments**

WBGI sued Wagner to recover corporate funds Wagner embezzled from WBGI. The Hawaii Court issued the Hawaii Decision extensively detailing Wagner's misfeasance. The Hawaii Court ruled that Wagner and his co-defendants "diverted WBGI funds to their personal purposes. These included funds for the Wagner's personal mortgage, property tax payments and personal credit card payments and for debts incurred to creditors for personal expenditures." [Exhibit D, pg. 6, ¶ 5] The Hawaii Court found that Wagner mischaracterized corporate funds as loans, business expenses and salary. [Exhibit D, pgs. 6-7, ¶ 5]

The Hawaii Court also went on to find Wagner guilty of abuse of process and malicious prosecution, [Exhibit D, pg. 45, ¶ 26-28], and declared Wagner a vexatious litigant for, most

WBGI 06

pertinent to the instant case, "relitigating or attempting to relitigate in propria persona and in bad faith the validity of final determinations in Nevada adverse to defendants involving WBGI who prevailed on all issues in the dispute." [Exhibit D, pgs. 46-47, ¶ ¶ 29-32].

The Hawaii Court entered judgment in favor of WBGI and against Wagner "in the sum of $351,520.00 relating to their illegal and fraudulent sales of WBGI treasury shares and associated misappropriation of WBGI funds, plus pre-judgment interest at the Legal Rate from the date of each check." Special damages in the amount of $385,793.90 were awarded. [Exhibit D, pgs. 47 48, ¶ ¶ 2 - 11] General damages of $500,000.00 [less $18,000] for "loss of good will" were awarded to WBGI from Wagner. [Exhibit D, pg. 48, ¶ 12] Finally, the Hawaii Court awarded WBGI punitive damages against Wagner for $500,000.00. [Exhibit D, pg. 48, ¶ 13]

## STATEMENT OF UNDISPUTED MATERIAL FACTS

A.    **Time Period From WBGI's Formation to Removal of Wagner**

1.    WBGI is a Nevada corporation that operates a botanical garden on the Island of Hawaii. [Exhibit D, pg. 9, ¶ 9]

2.    In 1995, Wagner created an entity called "World Botanical Gardens, Inc." in the State of Utah as a Utah corporation. [Exhibit D, pg. 10, ¶ 17]

3.    The State of Utah involuntarily dissolved World Botanical Gardens, Inc. on March 1, 1996. [Exhibit D, pg. 10, ¶ 18]

4.    "After the dissolution of the Utah corporation, no corporate legal entity existed until WBGI's formation as a Nevada corporation on April 12, 2001." [Exhibit D, pg. 10 - 11, ¶ 20]

5.    "Because they raised capital and otherwise sought to promote WBGI, both before and

after WBGI was incorporated in Nevada on April 12, 2001, Defendant Walter Wagner, Linda Wagner, and Dan Perkins were promoters of WBGI." [Exhibit D, pg. 12, ¶ 25]

6.      In April of 2003, WBGI established an independent Board of Directors ("the Board"). [Exhibit D, pg. 15, ¶ 39]

7.      In August of 2003, the Board appointed an executive and secretary/treasurer. [Exhibit D, pg. 15 - 16, ¶ ¶ 40 - 41]

8.      The newly appointed treasurer began to examine WBGI's books and records from the summer of 2003 until the fall of 2003. [Exhibit D, pg. 16, ¶ 43]

9.      The Board hired Wagner as "Garden Director" on December 1, 2003. [Exhibit D, pg. 16, ¶ 44]

10.     After the treasurer examined WBGI's books and records, she discovered Wagner had embezzled corporate funds. [Exhibit D, pg. 16, ¶ 45]

11.     The Board removed Wagner from the Board on September 2, 2004 for cause. [Exhibit D, pg. 18, ¶ 54] The Board also terminated Wagner from his position as Garden Director in May of 2004 for cause. [Exhibit D, pg. 70, ¶ 50]

**B.      Wagner Commits Fraud in Connection with the Sale of WBGI Securities**

12.     Wagner "raised capital for the operation of the business and for other purposes from investors both before and after WBGI's formation as a Nevada corporation by selling ownership interests in the business using a share purchase agreement referred to as a 'participation agreement.'" [Exhibit D, pg. 9, ¶ 14]

13.     Wagner "continued to raise capital for the business from investors through

WBGI 06

participation agreements in the name of the defunct Utah corporation between 1996 and March 2001." [Exhibit D, pg. 10, ¶ 20]

14.     "In sales materials provided to prospective purchasers by Defendant Walter Wagner . . . investors were led to believe that WBGI was an existing Utah corporation. After the dissolution of the Utah corporation, no corporate legal entity existed until WBGI's formation as a Nevada corporation on April 12, 2001." [Exhibit D, pg. 10 - 11, ¶ 20]

15.     "The marketing materials and other information provided by Defendant Walter Wagner . . . to investors between March of 1996 to April of 2001 falsely led these investors to believe they were investing in a valid existing Utah corporation." [Exhibit D, pg. 11, ¶ 21]

16.     "After WBGI was formed, [Wagner] . . . failed to take any steps to conduct elections of directors until the end of 2002. . . . [Wagner] continued to sell participation agreements for the purchase of shares after such formation, and represented to prospective purchasers that the funds generated would be used to pay for the development of the gardens including construction of a visitor center." [Exhibit D, pg. 11, ¶ 24]

17.     "Commencing in July of 2004 and continuing through January of 2005, Defendant Walter Wagner . . . began to solicit participation agreements for the sale of treasury shares of WBGI and diverted all of the money received from the sale of such shares to bank accounts which were owned or controlled by [Wagner]." [Exhibit D, pg. 19, ¶ 58]

18.     "Between January of 2005 through December of 2006, [Wagner] . . . engaged in the sale of participation agreement . . . bearing the name of World Botanical Gardens Foundation . . . ." [Exhibit D, pg. 20, ¶ 65]

WBGI 06

19.      "There is and was no World Botanical Gardens Foundation." [Exhibit D, pg. 22, ¶ 71]

20.      "Before and after the formation of the Nevada corporation in April of 2001, [Wagner] . . . continuously referred to [himself and co-defendants] and to investors as being 'partners' in a joint venture partnership which owned shares of WBGI. No such joint venture partnership existed." [Exhibit D, pg. 23 - 24, ¶ 81]

21.      "Despite [his] lack of authority to do so, after September 2, 2004, [Wagner] . . . continued to falsely hold [himself] out to be [a] WBGI . . . [officer and director] to investors . . . ." [Exhibit D, pg. 24, ¶ 82]

22.      "The share certificates which were purported to be in the name of World Botanical Gardens, Inc. and World Botanical Gardens Foundation were created as part of a fraud scheme whereby [Wagner] . . . sold WBGI treasury shares without authority or authorization to do so and pocketed the proceeds, instead of turning the proceeds over to WBGI as investors were led to believe would occur." [Exhibit D, pg. 22, ¶ 75]

23.      "[Wagner] created . . . false share certificates that were not authorized share certificates of WBGI." [Exhibit A, pg. 7, ¶ 28]

24.      "[Wagner] sold shares in an entity known as the World Botanical Gardens Foundation, but which were represented to potential purchasers as being shares of stock in WBGI." [Exhibit A, pgs. 7 - 8, ¶ 31]

25.      "[Wagner] knowingly and intentionally defrauded 60 innocent and unsuspecting investors who thought they were purchasing WBGI stock from WBGI through authorized agents of

WBGI 06

WBGI in a total amount of $351,520.00, funds which these unsuspecting investors intended WBGI

to receive and use to meet WBGI's capital needs. Instead, [Wagner] illegally and intentionally

misappropriated these funds to their personal purposes such that WBGI did not received [sic] any

of these funds. Of this $351,520.00, Defendant Walter Wagner personally received $281,216.00

. . . ." [Exhibit B, pgs. 2 - 3, ¶ 2]

26.     "[Wagner] intentionally and illegally engaged in a fraudulent scheme to sell shares

of WBGI stock to unsuspecting purchasers." [Exhibit A, pg. 7, ¶ 27]

27.     "Checks from investors . . . were endorsed and deposited into the personal bank

accounts of Defendants [sic] Wagner." [Exhibit D, pg. 22, ¶ 75]

28.     Wagner sold the shares "without disclosing any of these sales to WBGI's Board of

Directors." [Exhibit D, pg. 23, ¶ 78]

29.     "WBGI's Board of Directors passed a resolution in 2005 to recognize pre-April 2001

investors as legitimate WBGI shareholders." [Exhibit D, pg. 11, ¶ 23]

30.     "As a direct and proximate result of [Wagner's] . . . participation in the sale of

WBGI's treasury shares, WBGI has been damages [sic] in the sum of $356,720.00, plus pre-

judgment interest and said Defendants should be held jointly and severally liable therefor." [Exhibit

D, pg. 42, ¶ 9]

31.     The Hawaii Court found that Wagner engaged in the following:

(1) Fraudulent inducement and representations to investors that the funds would be
used for WBGI's projects or operating expenses; (2) Misrepresentations by each of
the Remaining Defendants of their representative capacity of WBGI; and (3)
Fraudulent endorsement of stock certificates by [Wagner] in which [Wagner]
represented [himself] as [an officer] of WBGI on in the non-existent World Botanical

WBGI 06

Gardens Foundation.

[Exhibit D, pg. 41, ¶ 8(A), (B) and (c)]

C. **Wagner Embezzles WBGI Funds and Commits Fraud or Defalcation While Acting in a Fiduciary Capacity**

32. Wagner "diverted WBGI funds for . . . personal purposes." [Exhibit D, pg. 6, ¶ 5(1)]

33. "As self-appointed officers and directors of WBGI, and as promoters of WBGI,

Defendants Walter Wagner, Linda Wagner, and Dan Perkins owed and assumed fiduciary duties to

WBGI which were breached when they converted WBGI funds to their personal benefit, without

disclosure to WBGI's shareholders and without approval." [Exhibit D, pg. 40, ¶ 3]

34. Wagner used investor funds:

> for commingled credit card and expense accounts which included expenses unrelated
> to WBGI's business operations, such as Defendants Wagners' personal living
> expenses, a mortgage on Defendant Walter's and Linda Wagner's personal residence,
> the purchase of a parcel of real property that was acquired with WBGI funds and put
> in Defendant Walter Wagner's name, legal expenses incurred by Defendant Walter
> Wagner to defend criminal charges that had been made against him for matters
> unrelated to WBGI business, and expenses incurred by Defendant Walter Wagner in
> establishing unrelated businesses, and expenses incurred by Defendant Walter
> Wagner in establishing unrelated businesses called Monterey Bay Terrarium located
> in Monterey, California, and "wellness" centers.

[Exhibit D, pg. 12, ¶ 26]

35. A $9,000.00 loan was provided to Wagner's spouse with WBGI funds, absent

approval or a written contract. [Exhibit D, pg. 12, ¶ 28]

36. A total of $27,463.28 as rent payments which were the "same amounts as the

mortgage payments on the Wagners' residence. . . . The fair rental value of this space was $150.00

per month. Thus, there is an overpayment of $22,813.28." [Exhibit D, pg. 13, ¶ 29]

37.    "WBGI paid a total of $42,617.56 in health insurance and dental insurance for Defendants Walter and Linda Wagner and their children. . . . No approval of such insurance payments was made by a disinterested board of WBGI's shareholders." [Exhibit D, pg. 13, ¶ 31]

38.    "$2,215.75 was paid for artwork, picture frames, and various dues for publications such as the Health Physics Society and entities unrelated to WBGI's business." [Exhibit D, pg. 14, ¶ 32]

39.    $152,779.03 was "paid for personal credit card expenses and other personal expenses with WBGI funds." [Exhibit D, pg. 10, ¶ 18]

40.    "[A] total of $65,650.34 in WBGI funds was spent for funding unrelated wellness foundations and Monterey Bay Terrarium ventures . . . ." [Exhibit D, pg. 14, ¶ 34]

41.    The sum of $47,789.69 relating to the misappropriation of WBGI funds to pay personal legal [bills] to the Biegel Law Firm" and $42,928.25 for the purchase of real property in Wagner's name. [Exhibit D, pg. 48, ¶ ¶ 10 -11]

42.    Wagner and his co-defendants "knowingly aided, assisted and abetted each other in the misappropriation of WBGI funds for Defendant Walter Wagner's and Linda Wagner's personal expenses . . . ." [Exhibit D, pg. 40, ¶ 1]

43.    Wagner did not produce "income tax returns which would establish that they declared any of the amounts received . . . over the years as income." [Exhibit D, pg. 43, ¶ 16]

44.    Wagner did not disclose these expenditures to the Board. Instead, the newly appointed treasurer discovered these expenditures. [Exhibit D, pgs. 16 - 71, ¶ ¶ 45 - 47]

45.    Wagner claimed "to investors that WBGI would use the funds for its operation and

WBGI 06

capital improvements. The Remaining Defendants converted WBGI treasury share sale money intended for WBGI's use to their own personal use." [Exhibit D, pg. 43, ¶ 17]

**D.   Wagner Intentionally and Maliciously Injures WBGI**

46.     "At every opportunity, Defendant Walter Wagner has attempted to paralyze and destroy WBGI - he has frozen the WBGI bank account; he has improperly and illegally recorded a lis pendens against the property of WBGI and its Garden Director, Dr. Lanny Neal; he has trespassed on WBGI property, where he sprayed weed-killer on Garden plants; he has taken over and/or closed WBGI's website, thereby destroying WBGI's internet marketing plan; and he improperly sold interests in WBGI and pocketed the proceeds, thereby depriving WBGI of badly needed capital and defrauding investors." [Exhibit A, pgs. 6 - 7, ¶ 23]

47.     Wagner "attempted to alter the signature cards of WBGI at the Bank of Hawaii, causing the bank of Hawaii to freeze the WBGI account and to bounce WBGI checks, damaging WBGI in the amount of at least $884.00." [Exhibit A, pg. 5, ¶ 17]

48.     Wagner "informed Network Solutions, the domain name registrar and the web-host of the WBGI website, <www.wbgi.com> that WBGI does not own the website and that ownership of the website is in litigation, twice causing the web-host to close the WBGI website. Closure of the website has caused WBGI to lose significant revenue from tourism and marketing opportunities. Defendant Walter Wagner . . . caused, at a bare minimum, $11,853.06 in damages to WBGI through closure of the WBGI website . . . ." [Exhibit A, pgs. 5 - 6, ¶ 18]

49.     The Nevada Court entered judgment against Wagner "in the amount of $12,737.06 . . . for damages . . . [caused] WBGI by freezing the WBGI bank account and closing the WBGI

WBGI 06

website." [Exhibit A, pg. 12, "Judgment"]

50.    The Hawaii Court found that Wagner:

abused the civil legal process by initiating lawsuits without probable cause by making misrepresentations to this Court and other Courts, by making misrepresentations to opposing counsel, by ignoring orders of this Court, by failing to disclose information . . ., by filing voluminous legal pleadings replete with misrepresentations, false and inconsistent statements, by filing numerous meritless motions each containing frivolous arguments, and by attempting to relitigate issues in this Court which were long-ago resolved in Nevada.

[Exhibit D, pgs. 45-46, ¶ 26]

51.    According to the Hawaii Court, "[t]he abuse of process was for the ulterior and unwarranted purpose of gaining control over WBGI and to frustrate WBGI's efforts at protecting its interests, and without factual or legal basis." [Exhibit D, pg. 46, ¶ 28]

52.    An exasperated Nevada Court proclaimed "I have never seen such reprehensible abuse of the legal process. Nothing this Court does seems to deter their abusive conduct save putting them in jail." [Exhibit D, pg. 39, ¶6(7)]

53.    In awarding $500,000 in punitive damages against Wagner [Exhibit D, pg. 48, ¶ 13], the Hawaii Court wrote:

WBGI has proven by clear and convincing evidence that the Remaining Defendants engaged in fraud, conversion, intentional interference with WBGI's prospective business opportunities, embezzlement, misappropriation or theft of WBGI's trade secrets and trade names, abuse of process, and malicious prosecution. The Remaining Defendants fraudulently used the WBGI entity to further their personal goals for their personal benefit, and acted willfully and without regard to the financial well being of WBGI or its shareholders.

[Exhibit D, pg. 43, ¶19]

54.    In awarding punitive damages, the Hawaii Court characterized Wagner's conduct as

WBGI 06

"wanton, malicious, and unlawful" and recognized that this conduct "damaged WBGI." [Exhibit D, pg. 44, ¶ 21(4)]

55.    The Hawaii Court assessed $1,000,000.00 [less $18,000.00] in damages against Wagner "for loss of good will." [Exhibit D, pg. 48, ¶ 12]

56.    The Hawaii Court explained: "As a direct and proximate result of the Remaining Defendants' actions, WBGI's ability to operate its business has been seriously restricted, its reputation has suffered, and its ability to raise funds for capital improvements has been affected due to the public's knowledge about the litigation that has been necessitated by the Remaining Defendants' activities. [Exhibit D, pg. 43, ¶ 18]

57. With attorneys' fees and taxable costs, the Hawaii Court entered judgment in favor of WBGI and against Wagner for: (1) $1,439,986.16 (jointly and severally with co-defendants Linda Wagner and Dan Perkins); (2) $287,977.34 (jointly and severally with co-defendant Linda Wagner); (3) $14,814.26 (jointly and severally with co-defendant Dan Perkins); and (4) $662,745.69 (solely against Wagner). [Exhibit E, pg. 2]

WBGI 06

## ARGUMENT

### POINT I

### WBGI IS ENTITLED TO SUMMARY JUDGMENT BASED ON THE UNDISPUTED MATERIAL FACTS

"A motion for summary judgment in an adversary proceeding under § 523(a)(2)(A) to have debt declared nondischargeable is governed by the same standards applicable to motions under Fed.R.Civ.P. 56." In re Stanley-Snow, 405 B.R. 11, 17 (1st Cir. BAP 2009). Under Fed.R.Civ.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

In the instant case, the material facts arise from the Judgments, the contents of which are undisputed. Under the doctrine of issue preclusion, Wagner is precluded from relitigating the issues resolved in the Judgments. Based on the undisputed facts contained in the Judgments, WBGI is entitled to judgment as a matter of law that the debts arising from the Judgments are nondischargeable under 11 U.S.C. § 523(a)(2), (4), (6), and (19).

### POINT II

### WAGNER IS NEITHER AN HONEST NOR UNFORTUNATE DEBTOR AND IS NOT ENTITLED TO DISCHARGE DEBTS OWED TO WBGI

The Bankruptcy Code "gives the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)..Nevertheless, "[b]y seeking discharge, however, [the debtor] place[s] the rectitude of his prior dealings squarely in issue, for as the Court has noted,

1

the Act limits th[e] opportunity [for discharge] to the 'honest but unfortunate debtor.'" <u>Brown v.</u> <u>Felsen</u>, 442 U.S. 127, 128(1979)(internal brackets added).

While the fresh start policy is important, "[t]he statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts . . . such as . . . liabilities for fraud." <u>Grogan v. Garner</u>, 498 U.S. 279, 287 (1991). Further, "exceptions to discharge should be limited to dishonest debtors seeking to abuse the bankruptcy system in order to evade the consequences of their misconduct." <u>In re Sherman</u>, 658 F.3d 1009, 1016 (9th Cir. 2011).

Based on these public policies, a number of principles guide any determination of nondischargeability. First, exceptions to discharge are narrowly construed. <u>See</u> <u>Oklahoma Dept. of</u> <u>Securities v. Wilcox</u>, 691 F.3d 1171, 1174 (10th Cir. 2012). Second, "the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." <u>Grogan v. Garner</u>, 498 U.S. 279, 291(1991).

**POINT III**

**<u>THE DOCTRINE OF ISSUE PRECLUSION APPLIES TO PREVENT WAGNER FROM</u>**
**<u>RELITIGATING ISSUES PREVIOUSLY RESOLVED IN THE JUDGMENTS</u>**

"Generally speaking, a judgment has preclusive effect in a subsequent lawsuit in the same forum and, by virtue of the U.S. Constitution and the full faith and credit statute, in a different forum." <u>Marrese v. Am. Acad. of Orthopedic Surgeons,</u> 470 U.S. 373, 380 (1985). The doctrine of issue preclusion applies in nondischargeability actions under the Bankruptcy Code. <u>See</u> <u>In re</u> <u>Wallace,</u> 840 F.2d 762, 764 (10th Cir. 1988)("the doctrine of collateral estoppel may be invoked to

2

bar relitigation of the factual issues underlying the determination of dischargeability.") The Tenth

Circuit explained that:

> The doctrine of issue preclusion prevents a party that has lost the battle over an issue
> from relitigating the same issue in another lawsuit. Generally speaking, it is not
> unfair to deny a litigant a second bite at the apple, and preclusion conserves judicial
> resources and consistency in judicial decisions.

> In re Corey, 583 F.3d 1249, 1251 (10th Cir. 2009).

Because the Judgments arise from state courts, the law of each state determines the preclusive

effects of such judgments. See Amaco Production Company v. Heimannn, 904 F.2d 1405, 1417(10th

Cir. 1990)("Federal courts must apply the law of the state rendering the judgment to determine its

collateral estoppel effect; we may not accord greater preclusive effect to a state court judgment than

would a state in which the judgment is rendered.")

One bankruptcy court noted that "the subsequent court may be required to determine what

the first court meant when it used a particular term of art or what the plaintiff otherwise had to prove

in order to persuade the trial court to attach a particular label to particular conduct." In re Busick, 264

B.R. 518, 525 (N.D. Ind. 2001). The court went on to observe:

> [t]his is often necessary not just because of the vagaries of state court findings, but
> also, because there is not necessarily a precise correspondence between a state law
> cause of action and the different elements a creditor might need to prove under §
> 523(a) with regard to dischargeability.

> Id.

Under Hawaii law, "[c]ollateral estoppel may preclude the relitigation of a fact or issue that

was previously determined in a prior action on a different claim or cause of action between the same

parties or their privies." Smallwood v. City and County of Honolulu, 185 P.3d 887, 895 (Haw. Ct.

App. 2008).

> The elements of issue preclusion under Hawaii law are:
>
> (1) the fact or issue in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the parties to the present action are the same or in privity with the parties in the prior action; and (4) the fact or issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment.

Id.

> Under Nevada law, the elements of issue preclusion are:
>
> (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated.

Five Star Capital Corporation v. Ruby, 194 P.3d 709, 713 (Nev. 2008).

With only slight semantic variations, Nevada's and Hawaii's elements for issue preclusion are the same. Both require: (1) a final determination on the merits; (2) the same parties; (3) actual litigation of issues which were necessary and/or essential to the final judgment; and (4) identical issues, which elements are demonstrated[2] as follows:

**(A)    The State Court Judgments Were on the Merits and Final**

Both the Nevada Judgment and the Nevada Contempt Judgment are on the merits. The Nevada Judgment came after "a trial on the merits . . . ." [Exhibit A, pg.1] The Nevada Contempt

---

[2] Magistrate Warner concluded the Judgments set forth herein met the requirements of issue preclusion in another case. Wagner v. Michie et al.; Case No. 2:11-cv-784. Judge Shelby recently affirmed Judge Warner's decision applying issue preclusion to the Judgments to the facts of that case.

WBGI 06

Judgment was issued after a full hearing. [Exhibit B, pg. 1] The Nevada Judgment and the Nevada Contempt Judgment are also final. The Nevada Supreme Court affirmed the trial court's decision and the United States Supreme Court rejected Wagner's Petition for Certiorari. [Exhibit C, pgs. 1 -2]

The Hawaii Decision and the Hawaii Judgment are also on the merits. The Hawaii Decision consists of extensive and detailed findings of fact and conclusions of law. [Exhibit D] Initially, the Hawaii Court granted summary judgment against Wagner on the liability issues of conversion and misappropriation. [Exhibit D, pgs. 6-7, ¶ 5(1) and (2)] Later, the Hawaii Court conducted a trial. [Exhibit D, pgs. 1-2]

The Hawaii Judgment is final. Wagner appealed to the Intermediate Court of Appeals of Hawaii, which rejected Wagner's appeal. [Exhibit F] Wagner filed an Application for Writ of Certiorari to the Hawaii Supreme Court, which was rejected. [Exhibit G].

**(B)    Same Parties**

WBGI and Wagner were parties in both the Hawaii and Nevada cases. [Exhibit A - G]

**(C)    Issues Actually and Necessarily Litigated**

The issues were actually and necessarily litigated. The Nevada Court considered and decided Wagner's liability and damages for: (1) altering the signature cards on WBGI's bank account; (2) shutting down WBGI's website; and (3) fraudulently issuing WBGI securities. All of these issues dealt with Wagner's conduct which was pertinent to the propriety of his removal as well as the proper constitution of the existing Board. They were, therefore, necessary to the resolution of the overall case.

5

Similarly, the Hawaii Court considered and decided: (1) Wagner's common law fraud in selling WBGI securities; (2) Wagner's embezzlement of WBGI's funds; and (3) Wagner's willful and malicious infliction of injury upon WBGI. Wagner's conduct and liability to WBGI was directly at issue and the Hawaii Court's determination of these issues was necessary to its ultimate judgment.

**(D)     Identical Issues**

Finally, the issues adjudicated in the Hawaii and Nevada cases and the instant Adversary Proceeding to determine the nondischargeability of the debts are identical.

## EXCEPTIONS TO DISCHARGE

**(1)     Section 523(a)(2) false representation, false pretense, and actual fraud**

Section 523(a)(2) provides that a debtor may not receive a discharge from any debt "for money, property, services . . . obtained by - (A) false pretenses, a false representation, or actual fraud . . . ." A determination of fraud under Section 523(a)(2) is a matter of federal law. See In re Busick, 264 B.R. 518, 525 (N.D. Ind. 2001)("Whether or not a debtor's actions constitute this type of prohibited conduct is a question of federal law.")

The traditional elements of nondischargeability claim for fraud are:

> [1] The debtor made a false representation; [2] the debtor made the representation with the intent to deceive the creditor; [3]the creditor relied on the representation; [4] the creditor's reliance was reasonable; and [5] the debtor's representation caused the creditor to sustain a loss.

Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1373 (10th Cir. 1996).

However, in In re Vickery, 488 B.R. 680, 690-691 (10th Cir. BAP 2013), the Court rejected strict adherence to the above elements, noting that actual fraud is broader than misrepresentation and

6

that actual fraud "under § 523(a)(2)(A) is not limited to misrepresentations or misleading omissions." The Court remanded the case to allow proof of "actual fraud through [the debtor's] transfer of assets . . . ." Id. at 691. In so ruling, the Court relied on two decisions, McClellan v. Cantrell, 217 F.3d 890 (7th Cir. 2000) and In re Vitanovich, 259 B.R. 873 (6th Cir. BAP 2001).

In McClellan, Judge Posner noted that actual fraud involves "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." Id. at 893 (citing 4 *Collier on Bankruptcy* ¶ 523.08[1][e], p. 523-45 (15th ed., Lawrence P. King ed., 2000)) The scheme before Judge Posner did not involve a misrepresentation, but instead the debtor's transfer of assets to a third party to avoid payment to the creditor. Conceding the absence of reliance, Judge Posner reasoned that "reliance is relevant only when a fraud takes the form of a misrepresentation." Id. at 894. Further, misrepresentation "is not the only form that fraud can take or the only form that makes a debt nondischargeable, given that debts created by misrepresentation constitute a separate category of nondischargeable debts." Id. The Court found that the debt was nondischargeable despite the absence of reliance.

Following the Seventh Circuit, the Sixth Circuit in In re Vitanovich, 259 B.R. 873, 888 (6th Cir. BAP 2001), addressed the nondischargeability of a debt arising from the debtor's check kiting scheme. Again, the Court was confronted with the absence of a representation. The trial court found that a check is not a factual assertion. Id. at 876. However, the Court noted that actual fraud "is not limited to misrepresentations or misleading omissions." Id. at 877. plainly stated that: "When a debtor intentionally engages in a scheme to deprive or cheat another of a property or legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy

7

Code." Id. at 888. Accordingly, the Court found the debt nondischargeable despite the absence of a misrepresentation.

Wagner's conduct constitutes actual fraud within the meaning of § 523(a)(2)(A) and In re Vickery, 488 B.R. 680 (10th Cir. BAP 2013). The Nevada and Hawaii Judgments are replete with examples of Wagner's fraudulent conduct. See Statement of Undisputed Material Facts (hereinafter "SOF") ¶ 23 ("[Wagner] created . . . false share certificates that were not authorized share certificates of WBGI."); SOF ¶ 24 ("[Wagner] sold shares in an entity known as the World Botanical Gardens Foundation, but which were represented to potential purchasers as being shares of stock in WBGI."); SOF ¶ 25 ("[Wagner] knowingly and intentionally defrauded 60 innocent and unsuspecting investors who thought they were purchasing WBGI stock from WBGI through authorized agents of WBGI . . . ."); SOF ¶ 15 ("The marketing materials and other information provided by Defendant Walter Wagner . . . to investors between March of 1996 to April of 2001 falsely led these investors to believe they were investing in a valid existing Utah corporation."); SOF ¶ 16 (Wagner "represented to prospective purchasers that the funds would be used to pay for the development of the gardens including construction of a visitors center."); SOF ¶¶ 18 - 19 ("Between January of 2005 through December of 2006, [Wagner] . . . engaged in the sale of participation agreement . . . bearing the name of World Botanical Gardens Foundation . . . ." but "[t]here is and was no World Botanical Gardens Foundation."); SOF ¶ 20("[Wagner] . . . continuously referred to [himself and co-defendants] and to investors as being 'partners' in a joint venture partnership which owned shares of WBGI. No such joint venture partnership existed."); SOF ¶ 21 ("Despite [his] lack of authority to do so, after September 2, 2004, [Wagner] . . . continued to falsely hold [himself] out to be [a]

WBGI 06

WBGI officers and directors to investors . . . .") and SOF ¶ 22 ("The share certificates which were purported to be in the name of World Botanical Gardens, Inc. and World Botanical Gardens Foundation were created as part of a fraud scheme whereby [Wagner] . . . sold WBGI treasury shares without authority or authorization to do so and pocketed the proceeds, instead of turning the proceeds over to WBGI as investors were led to believe would occur.")

The Nevada and Hawaii Courts also made findings concerning Wagner's intent. See SOF ¶ 26 ("[Wagner] intentionally and illegally engaged in a fraudulent scheme to sell shares of WBGI stock to unsuspecting purchasers.") and SOF ¶ 25 ("[Wagner] knowingly and intentionally defrauded 60 innocent and unsuspecting investors . . . .")

The Nevada and Hawaii Courts found that Wagner's conduct caused a loss to WBGI. See SOF ¶ 30 ("As a direct and proximate result of [Wagner's] . . . participation in the sale of WBGI's treasury shares, WBGI has been damages [sic] in the sum of $356,720.00, plus pre-judgment interest and said Defendants should be held jointly and severally liable therefor.") and SOF ¶ 29 (WBGI's Board of Directors passed a resolution in 2005 to recognize pre-April 2001 investors as legitimate WBGI shareholders.")[3]

Because WBGI did not know of Wagner's fraudulent scheme, it cannot have justifiably relied on Wagner's misrepresentations. WBGI is in the same position as the creditor in In re Vickery, 488 B.R. 680, 690-691 (10th Cir. BAP 2013) who, while clearly defrauded, could not show reliance.

---

[3] Only Wagner's fraudulent sales which occurred after his removal from WBGI were reduced to a monetary amount in a judgment. The earlier sales establish a pattern of fraud and one of the sources of the misappropriated funds.

WBGI 06

Despite this, the Court recognized the existence of actual fraud. Both the Hawaii and Nevada Courts

could not have been clearer. Wagner defrauded WBGI. Therefore, Wagner's debt is

nondischargeable under § 523(a)(2)(A).

**(2)    Section 523(a)(4) Embezzlement and fraud or defalcation while acting in a fiduciary capacity**

Section 523(a)(4) provides that a debtor may not receive a discharge from any debt "for fraud

or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." WBGI's judgments

against Wagner are for embezzlement and fraud or defalcation while acting in a fiduciary capacity.

### a. Wagner's Embezzlement

In <u>Moore v. United States</u>, 160 U.S.268, 269 (1895) the Court noted that:

> Embezzlement is the fraudulent appropriation of property by a person to whom such
> property has been intrusted, or into whose hands it has lawfully come. It differs from
> larceny in the fact that the original taking of the property was lawful, or with the
> consent of the owner, while in larceny the felonious intent must have existed at the
> time of the taking.

"Nondischargeability under 11 U.S.C. § 523(a)(4) may rest on proof of embezzlement or

larceny without requiring proof of a fiduciary relationship." <u>In re Palilla</u>, 493 B.R. 248, 252 (Bankr.

D. Colo. 2013) Embezzlement has five elements:

> 1. Entrustment (property lawfully obtained originally); 2. Of property; 3. Of another;
> 4. That is misappropriated (used for or consumed for a purpose other than that for
> which it was entrusted); 5. With fraudulent intent.

<u>Bryant v. Tilley (In re Tilley)</u>, 286 B.R. 782, 789 (Bankr. D.Colo. 2002).

Embezzlement requires an "intention to steal." <u>In re Palilla</u>, 493 B.R. 248, 252 (Bankr. D.

Colo. 2013) "Intent can be inferred, however, from the surrounding circumstances." <u>Id</u>.

10                                          WBGI 06

Wagner obtained the property from WBGI investors. See SOF ¶ 27 ("Checks from investors
. . . were endorsed and deposited into the personal bank accounts of Defendants [sic] Wagner.") The
funds were the property of the investors and WBGI. See SOF ¶ 32 (Wagner "diverted WBGI funds
for . . . personal purposes.") Wagner used the funds for a purpose other than that for which the funds
were entrusted. See SOF ¶ 45 (Wagner breached fiduciary duty by "claiming to investors that WBGI
would use the funds for its operation and capital improvements. The Remaining Defendants
converted WBGI treasury share sale money intended for WBGI's use to their own personal use.")
and SOF ¶ 33 ("As self-appointed officers and directors of WBGI, and as promoters of WBGI,
Defendants Walter Wagner, Linda Wagner, and Dan Perkins owed and assumed fiduciary duties to
WBGI which were breached when they converted WBGI funds to their personal benefit, without
disclosure to WBGI's shareholders and without approval.")

The property was used for a purpose other than that for which it was entrusted. See SOF ¶
34 (Wagner used investor funds "for commingled credit card and expense accounts which included
expenses unrelated to WBGI's business operations, such as Defendants Wagners' personal living
expenses, a mortgage on Defendant Walter's and Linda Wagner's personal residence, the purchase
of a parcel of real property that was acquired with WBGI funds and put in Defendant Walter
Wagner's name, legal expenses incurred by Defendant Walter Wagner to defend criminal charges
that had been made against him for matters unrelated to WBGI business, and expenses incurred by
Defendant Walter Wagner in establishing unrelated businesses, and expenses incurred by Defendant
Walter Wagner in establishing unrelated businesses called Monterey Bay Terrarium located in
Monterey, California, and 'wellness centers.'")

11

WBGI 06

Specific instances of misappropriation include:

- A $9,000.00 loan was provided to Wagner's spouse with WBGI funds, absent approval or a written contract. [SOF ¶ 35]

- A total of $27,463.28 as rent payments which were the "same amounts as the mortgage payments on the Wagners' residence.... The fair rental value of this space was $150.00 per month. Thus, there is an overpayment of $22,813.28." [SOF ¶ 36]

- "WBGI paid a total of $42,617.56 in health insurance and dental insurance for Defendants Walter and Linda Wagner and their children. . . . No approval of such insurance payments was made by a disinterested board of WBGI's shareholders." [SOF ¶ 37]

- "$2,215.75 was paid for artwork, picture frames, and various dues for publications such as the Health Physics Society and entities unrelated to WBGI's business." [SOF ¶ 38]

- $152,779.03 was "paid for personal credit card expenses and other personal expenses with WBGI funds." [SOF ¶ 39]

- "[A] total of $65,650.34 in WBGI funds was spend for funding unrelated wellness foundations and Monterey Bay Terrarium ventures . . . ." [SOF ¶ 40]

- The sum of $47,789.69 relating to the misappropriation of WBGI funds to pay personal legal [bills] to the Biegel Law Firm" [SOF ¶ 41]

- 42,928.25 for the purchase of real property in Wagner's name. [SOF ¶ 41]

Addressing Wagner's intent, the Hawaii Court found Wagner and his co-defendants "knowingly aided, assisted and abetted each other in the misappropriation of WBGI funds for Defendant Walter Wagner's and Linda Wagner's personal expenses . . . ." [SOF ¶ 42] The surrounding circumstances establish Wagner's intent. Wagner did not produce "income tax returns which would establish that they declared any of the amounts received . . . over the years as income."[SOF ¶ 43] Wagner did not disclose these expenditures to the Board. Instead, the newly

WBGI 06

appointed treasurer discovered these expenditures. [SOF ¶ 44] With respect to the fraudulent shares

Wagner sold, he did so "without disclosing any of these sales to WBGI's Board of Directors." [SOF

¶ 28] Wagner misappropriated all of these funds with fraudulent intent.

### b. Fraud or Defalcation While Acting in a Fiduciary Capacity

"Whether a relationship is a 'fiduciary' one within the meaning of § 523(a)(4) is a question

of federal law." In re Nail, 680 F.3d 1036, 1039 (8th Cir. 2012). The debtor "must have been a trustee

before the wrong and without reference thereto." Davis v. Aetna Acceptance Co., 293 U.S. 328, 333,

(1934). "[C]ourts generally agree that defalcation requires: 1) a fiduciary relationship; 2) breach of

that fiduciary relationship; and 3) a resulting loss." In re Garver, 116 F.3d 176, 179 (6th Cir. 1997)

In the Tenth Circuit, an express or technical trust is required to establish a fiduciary relationship

under § 523(a)(4). In re Romero, 535 F.2d 618, 621 (10th Cir. 1976). In a technical trust, "the parties'

fiduciary obligations are imposed by law, not implied by law." Romero, 535 F.2d at 621-622.

Under state law, Wagner had a fiduciary relationship with both the investors and WBGI.

See e.g. McCandless v. Furlaud, 296 U.S. 140, 156 (1935)("Promoters of a corporation stand in a

fiduciary relation to it to this extent at least, that they will be chargeable as trustees if they deal with

it unconscionably or oppressively or in violation of a statute . . . ."); Public Investment Limited v.

Bandeirante Corporation, 740 F.2d 1222, 1235 n. 72 (D.C. Cir. 1984)("It has long been settled law

that the promoter of a corporation owes that corporation a fiduciary duty.") and Hitchcock v.

Hustace, 14 Haw. 232 (Hawaii Terr. 1902)(promoters are fiduciaries and "occupy such a relation of

trust and confident . . . toward those whom they invite to join them in the intended enterprise . . . .")

Generally, under Tenth Circuit case law something more than a generalized fiduciary

13                                                          WBGI 06

relationship between an officer and a corporation is required. See In re Jenkins, 489 B.R. 487

(Bankr. D.Kan. 2013). Recognizing this limitation, WBGI argues that Wagner acted, as a promoter,

in a fiduciary capacity with respect to WBGI's investors. See SOF ¶ 5 ("Because they raised capital

and otherwise sought to promote WBGI, both before and after WBGI was incorporated in Nevada

on April 12, 2001, Defendant Walter Wagner, Linda Wagner, and Dan Perkins were promoters of

WBGI.") and SOF ¶ 33 ("As self-appointed officers and directors of WBGI, and as promoters of

WBGI, Defendants Walter Wagner, Linda Wagner, and Dan Perkins owed and assumed fiduciary

duties to WBGI which were breached when they converted WBGI funds to their personal benefit,

without disclosure to WBGI's shareholders and without approval.")

Unlike general corporate funds, investor funds are at their inception separate and distinct

funds which constitute an identifiable res. The funds were for a specific purpose - investment in

WBGI. Wagner's duty was to use the funds for that purpose. By spending the funds for personal

benefit, he breached his fiduciary duty to the investors. The remaining elements, breach of fiduciary

duty and resulting damages, are established in the preceding section detailing Wagner's

embezzlement of WBGI funds.

**3.     Section 523(a)(6) willful and malicious injury by Wagner to WBGI**

Courts have uniformly found Wagner's conduct to be willful and malicious. Moreover,

portions of the Nevada and Hawaii Judgments are expressly based on Wagner's willful and

malicious conduct.

Section 523(a)(6) provides that a debtor may not receive a discharge from any debt "for

willful and malicious injury by the debtor to another entity or to the property of another entity."

WBGI 06

WBGI's judgments against Wagner are for willful and malicious injury by the debtor to another entity or to the property of another entity. "To qualify as 'malicious' the debtor's action must be targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause financial harm." In re Madsen, 195 F.3d 988, 989 (8th Cir. 1999)(quotation omitted). Further, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998)(emphasis original).

Wagner's actions were targeted at WBGI and certain to cause WBGI financial harm. These actions include injury to WBGI property, stealing investor funds and malicious prosecution. Wagner's willful and malicious injury permanently damaged WBGI's good will.

**(i) Willful and Malicious Injury to WBGI Property**

The Nevada Court expressly commented on Wagner's intent:

> At every opportunity, Defendant Walter Wagner has attempted to paralyze and destroy WBGI - he has frozen the WBGI bank account; he has improperly and illegally recorded a lis pendens against the property of WBGI and its Garden Director, Dr. Lanny Neal; he has trespassed on WBGI property, where he sprayed weed-killer on Garden plants; he has taken over and/or closed WBGI's website, thereby destroying WBGI's internet marketing plan; and he improperly sold interests in WBGI and pocketed the proceeds, thereby depriving WBGI of badly needed capital and defrauding investors.
> [SOF ¶ 46]

Specifically, Wagner "attempted to alter the signature cards of WBGI at the Bank of Hawaii, causing the bank of Hawaii to freeze the WBGI account and to bounce WBGI checks, damaging WBGI in the amount of at least $884.00." [SOF ¶ 47] In addition:

> Defendant Walter Wagner . . . informed Network Solutions, the domain name

15

registrar and the web-host of the WBGI website, <www.wbgi.com> that WBGI does not own the website and that ownership of the website is in litigation, twice causing the web-host to close the WBGI website. Closure of the website has caused WBGI to lose significant revenue from tourism and marketing opportunities. Defendant Walter Wagner . . . caused, at a bare minimum, $11,853.06 in damages to WBGI through closure of the WBGI website . . . .

[SOF ¶ 48]

The Nevada Court entered judgment against Wagner "in the amount of $12,737.06 together with post judgment interest at the legal rate for damages they cause [sic] WBGI by freezing the WBGI bank account and closing the WBGI website." [SOF ¶ 49]

**(ii) Wagner's Willful and Malicious Abuse of Process**

Detailing Wagner's chronic abuse of the legal process, the Hawaii Court also specifically noted Wagner's intent. For instance, the Hawaii Court found that Wagner:

abused the civil legal process by initiating lawsuits without probable cause by making misrepresentations to this Court and other Courts, by making misrepresentations to opposing counsel, by ignoring orders of this Court, by failing to disclose information . . ., by filing voluminous legal pleadings replete with misrepresentations, false and inconsistent statements, by filing numerous meritless motions each containing frivolous arguments, and by attempting to relitigate issues in this Court which were long-ago resolved in Nevada.

[SOF ¶ 50] See also SOF ¶ 51 ("[t]he abuse of process was for the ulterior and unwarranted purpose of gaining control over WBGI and to frustrate WBGI's efforts at protecting its interests, and without factual or legal basis.")

An exasperated Nevada Court proclaimed "I have never seen such reprehensible abuse of the legal process. Nothing this Court does seems to deter their abusive conduct save putting them in jail." [SOF ¶ 52]

WBGI 06

**(iii) Wagner's Fraud Constitutes a Willful and Malicious Injury**

As set forth herein, Wagner defrauded WBGI and robbed it of much needed capital and operating expenses. Wagner's conduct, in addition to being fraudulent, was willful and malicious. The conduct irreparably damaged WBGI's ability ro raise capital and business reputation. Wagner intended not just the act, but to harm WBGI - an intent expressed in the Judgments.

**(iv) Resulting Damages from Wagner's Willful and Malicious Conduct**

WBGI's sustained damages to its good will as a result of Wagner's willful and malicious conduct. The Hawaii Court explained: "As a direct and proximate result of the Remaining Defendants' actions, WBGI's ability to operate its business has been seriously restricted, its reputation has suffered, and its ability to raise funds for capital improvements has been affected due to the public's knowledge about the litigation that has been necessitated by the Remaining Defendants' activities." [SOF ¶ 56] The Hawaii Court assessed $1,000,000.00 [less $18,000.00] in damages against Wagner "for loss of good will." [SOF ¶ 55]

The Hawaii Court next imposed $500,000 in punitive damages against Wagner:

WBGI has proven by clear and convincing evidence that the Remaining Defendants engaged in fraud, conversion, intentional interference with WBGI's prospective business opportunities, embezzlement, misappropriation or theft of WBGI's trade secrets and trade names, abuse of process, and malicious prosecution. The Remaining Defendants fraudulently used the WBGI entity to further their personal goals for their personal benefit, and acted willfully and without regard to the financial well being of WBGI or its shareholders.

[SOF ¶ 53]

In awarding punitive damages, the Hawaii Court characterized Wagner's conduct as "wanton, malicious, and unlawful" and recognized that this conduct "damaged WBGI." [SOF ¶ 54] Because

17

Wagner's punitive damage award arises from willful and malicious conduct, it is nondischargeable. See In re Simpson, 226 B.R. 284, 1998 WL 296331, * 6 (10th Cir. BAP 1998)("The punitive damages are nondischargeable only if the underlying compensatory damages are nondischargeable.") and In re Lang, 293 B.R. 501, 519 (10th Cir. BAP 2003)("An award of punitive damages under state law is part of the nondischargeable debt delineated in § 523(a)(2)(a).")

Later, in entering the First Amended Final Judgment [Exhibit E], the Hawaii Court granted attorneys' fees and costs to WBGI resulting in a judgment of (1) $1,439,986.16 (jointly and severally with co-defendants Linda Wagner and Dan Perkins); (2) $287,977.34 (jointly and severally with co-defendant Linda Wagner); (3) $14,814.26 (jointly and severally with co-defendant Dan Perkins); and (4) $662,745.69 (solely against Wagner). [SOF ¶57]

**(4)    Section 523(a)(19) fraud in connection with sale of security**

WBGI obtained a judgment against Wagner for fraud in connection with the sale of WBGI's securities. As part of the Sarbanes-Oxley Act, Congress created an additional category of nondischargeability: debts for violations of federal or state securities laws. This new exception, set forth in § 523(a)(19)("Exceptions to Discharge"), reads in relevant part:

(a)    A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .
(19) that

(A) is for - . . . .

(ii)    common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from

(i)    any judgment, order, consent order, or decree entered in any
Federal or State judicial or administrative proceeding;

Section 523(a)(19) contains a two-part test to determine the nondischargeability of debt:

[e]ssentially, this statute precludes dischargeability if two conditions are met. First,
the Plaintiffs must establish that the debt is for violation of securities laws or for
fraud in connection with the purchase or sale of a security (the "Subsection A
requirement"). In addition, the debt must be memorialized in a judicial or
administrative order or settlement agreement (the "Subsection B requirement"). If
Plaintiffs cannot establish both requirements, their claim will fail.

In re Jafari, 401 B.R. 494, 496 (Bankr. D. Colo. 2009)

WBGI meets both conditions required to establish nondischargeability under § 523(a)(19).

WBGI's Judgment is for Wagner's common law fraud, deceit, or manipulation in connection with

the purchase or sale of any security.

a.    **Wagner's Debt is for common law fraud in connection with the purchase or sale
of any security**

WBGI's judgment in the Hawaii case is in part for Wagner's common law fraud in

connection with the sale of WBGI securities. [SOF ¶ 25] ("[Wagner] knowingly and intentionally

defrauded 60 innocent and unsuspecting investors who thought they were purchasing WBGI stock

from WBGI through authorized agents of WBGI in a total amount of $351,520.00, funds which these

unsuspecting investors intended WBGI to receive and use to meet WBGI's capital needs. Instead,

[Wagner] illegally and intentionally misappropriated these funds to their personal purposes such that

WBGI did not received [sic] any of these funds. Of this $351,520.00, Defendant Walter Wagner

personally received $281,216.00 . . . . .") and [SOF ¶ 31] (The Hawaii Court found that Wagner

engaged in the following: (1) Fraudulent inducement and representations to investors that the funds

19                                          WBGI 06

would be used for WBGI's projects or operating expenses; (2) Misrepresentations by each of the Remaining Defendants of their representative capacity of WBGI; and (3) Fraudulent endorsement of stock certificates by [Wagner] in which [Wagner] represented [himself] as [an] officers of WBGI on in the non-existent World Botanical Gardens Foundation.)" The instruments at issue were securities. See HRS 485-1(13)(defining security as "any note, stock, treasury stock, bond, debenture . . . certification of interest or participation in a profit-sharing agreement . . . .")

Wagner's fraud, detailed herein, was in connection with the sale of a security, namely WBGI treasury shares and "participation agreements." Accordingly, the portion of the Hawaii Judgment attributable to securities fraud falls squarely within the requirements of § 523(a)(19).

### b.    Wagner's Debt is Memorialized in a Judicial Order

WBGI meets the second requirement of § 523(a)(19), which requires the memorialization of the debt in a judicial order. Wagner's securities fraud was memorialized in the Nevada Judgment, the Nevada Contempt Judgment and the Hawaii Decision. See Exhibit D, pg. 47 ¶ 8 (imposing $351,520.00 in damages relating to "illegal and fraudulent sales of WBGI treasury shares and associated misappropriation of WBGI funds . . . .") and Exhibit B, pg. 2 ¶ 2 (Wagner "knowingly and intentionally defrauded 60 innocent and unsuspecting investors . . . .)

WBGI 06

## CONCLUSION

For the foregoing reasons, WBGI respectfully requests that the Court grant WBGI's Motion

for Summary Judgment and find the debt arising out of the Judgments is excepted from discharge

pursuant to 11 U.S.C. § 523(a)(2), (4), (6) and (19).

DATED this ⧸24⧹ day of September, 2013.

**RICHER & OVERHOLT, P.C.**

Arnold Richer
Attorneys for Plaintiff World Botanical Gardens, Inc.

21

WBGI 06

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to be delivered to the following in the manner and on the date below indicated:

[X] Mail                             Walter Wagner
[ ] Fax                                532 N 700 E
[ ] Email                            Payson, Utah 84651
[ ] Hand Delivery           (Pro Se Appearance)

DATED this 24 day of September, 2013.

WBGI 06